STATE, Respondent v. BATTERMAN, Appellant

(110 N.W.2d 139)

(File No. 9882. Opinion filed July 17, 1961)

George W. Wuest of Danforth, Bleeker & Carlson, Mitchell, for Defendant and Appellant.

A. C. Miller, Atty. Gen., Gerald L. Reade, Asst. Atty. Gen., for Plaintiff and Respondent.

SMITH, P.J. Defendant stands convicted of the offense of operating a motor vehicle under the influence of alcoholic liquor proscribed by SDC 1960 Supp. 44.9922. His appeal presents two propositions which will receive separate statement and consideration.

The first contention of defendant deals with a motion to suppress all evidence of a chemical test of the alcoholic content of his blood. Such a chemical test of the blood of defendant, withdrawn by a qualified doctor shortly after his arrest, revealed an alcoholic content indicating defendant unquestionably was then under the influence of alcoholic liquor. Other testimony bearing on the issue was in conflict. Prior to the trial the defendant made a motion for an order suppressing all evidence of this chemical test on the ground that the same was made in violation of SDC 1960 Supp. 44.0302-2, commonly known as the implied consent statute. It is urged that the court erred in overruling defendant's motion to suppress.

The pertinent provisions of SDC 1960 Supp. 44.0302-2 read as follows:

"Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in SDC 1960 Supp. 44.0302-1, provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving under the influence of alcoholic liquor and that such person **has been charged with a traffic violation. Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the applicable provisions of this section in the event of such refusal with respect to the revocation of such person's driving permit.** If such person, after request and explanation as hereinbefore provided, shall refuse to submit to such chemical analysis, then such test shall not be given. In such event, the Commissioner of Motor Vehicles shall revoke for one year his permit to drive and any

nonresident operating privilege. * * *" Emphasis supplied.

The facts are not in dispute. At the time of his arrest defendant was informed of the nature of the charge against him. Thereafter and before a formal charge was made or filed, request was made by the officer who had him in charge that he submit to a chemical test of his blood. He was then advised he could refuse to submit. Although reluctantly, he consented to submit. His consent was not coerced. However, the officer making the request did not explain the provisions of the act which would be applicable in the event defendant refused to submit to the requested test.

Predicated upon the words of the implied consent statute we have emphasized supra, defendant urges that consent to the test of his blood was illegally obtained for the reason a full explanation of the provisions of the act was not made to him by the officer at the time he requested defendant to submit to such a test, and that the request and test was made before a formal charge had been filed, and hence the test was illegal and void. Whether such a legislative intention should be implied from either or both of the provisions to which defendant points is the problem for solution.

In prosecutions for driving while under the influence of intoxicating liquor, the admissibility in evidence of testimony as to the concentration of alcohol in the blood of defendant, as revealed by chemical analysis, has rested on a statutory foundation in this jurisdiction since the enactment of Ch. 42, Laws 1949, codified as SDC 1960 Supp. 44.0302-1. The implied consent statute, here under consideration, was not enacted until 1959 as Ch. 264, Laws 1959.

■ The emphasized words that "such person has been charged with a traffic violation" appear in the first sentence of the act which deals with the circumstances giving rise to an "implied consent" to the analysis of the bodily substances of a suspected driver. If it be assumed,

however, that the legislature intended those words to have some relation to an express voluntary consent to such a test, very practical reasons persuade us that defendant's contention is not sound. To hold that the legislature intended a request and test could not be made until a formal charge had been filed, would be to hold that it intended to incorporate a requirement which, in a considerable volume of instances, would defeat its purpose. In those instances, the lapse of time involved before a formal charge could be lodged would permit elimination from the system of the suspect of all or a portion of its alcoholic content. For this reason we are of the opinion that the word "charged" comprehends either a formal charge or the informal charge of an arresting officer.

The emphasized words "Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the applicable provisions of this section in the event of such refusal with respect to the revocation of such person's driving permit" are more directly related to a voluntary consent, because they describe advice the officer is directed to give in requesting such a consent. It might be contended with some show of reason that this direction for advice as to the right to refuse to submit and of the sanction such a refusal would entail was incorporated in the act as a directory means of inducing the desired voluntary consents and without any intention of affecting the validity of voluntary consents received in the absence of the directed explanation. Cf. People v. Ward, 307 N.Y. 73, 120 N.E.2d 211. We are not confronted with so comprehensive a question. The defendant was informed that he had a right to refuse to submit. Hence, whether the legislature intended an express consent to be invalid, if received in the absence of an explanation of the penalty attached to a refusal to submit, is the narrow question before us.

From a cursory consideration of this act it seems obvious the lawmakers did not intend one to be subject to the

penalty of a revocation of his driver's privilege unless he be advised that a refusal of the request to submit to the test will subject him to that penalty. However, nothing but the letter of the act offers any support for the contention that the consent of one who had been advised of his right to refuse to submit to the test was intended to be invalidated because he had not been told that had he refused to submit he would have had his privilege to drive revoked. Because we can conceive of no reason for believing the legislature intended such a result, we are of the view that such an intention cannot soundly be implied from the mere letter of the quoted language. Therefore, we hold the contention untenable.

■ The second contention is that the court erred in its instruction to the jury that if there is more than .15 per cent by weight of alcohol in the defendant's blood, it shall be presumed that he was under the influence of intoxicating liquor. This position of defendant is founded upon the contention that the statutory presumption to which the instruction makes reference does not obtain in a prosecution brought under Ch. 246, Laws 1953, codified as SDC 1960 Supp. 44.9922 under which this prosecution was brought.

It is the wording of Ch. 42, Laws 1949, codified as SDC 1960 Supp. 44.0302-1, which supplies the principal predicate for this contention of defendant. We elect to quote the title and the body of this chapter. It reads:

"An Act Entitled, An Act Relating to the Driving of Any Motor Vehicle in This State By a Person in an Intoxicated Condition and Providing a Method for Determining the Existence or Non-existence of Such Intoxicated Condition."

"Section 1. Persons under the influence of intoxicating liquor or of drugs. It is unlawful and punishable for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this State.

"Section 2. **In any criminal Prosecution for a violation of Section 1 of this Act** relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:

"1. If there was at that time 0.05 percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"2. If there was at that time in excess of 0.05 percent but less than 0.15 percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

"3. If there was at that time 0.15 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor;

"4. The foregoing provisions of this subdivision shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor. The fact that any person charged with a violation of this subsection is or has been entitled to use such drug under the laws of this State shall not constitute a defense against **any charge of violating this subsection.**" Emphasis supplied.

We digress to observe that although this act does not embrace a provision for a penalty, the general provisions of the statutes fix the penalty. Cf. SDC 13.0105 and 13.0607.

The title and pertinent parts of Ch. 246, Laws 1953, codified as 1960 Supp. 44.9922, under which defendant was charged reads in part as follows:

"An Act Entitled, An Act Relating to Motor Vehicles, Prohibiting the Driving of Motor Vehicles while under the Influence of Intoxicating Liquor or Narcotic Drugs, Providing Penalties Therefor and Repealng SDC 44.9922."

"Section 1. Drunken Driving; Penalties. It shall be unlawful for any person to operate any motor vehicle while under the influence of alcoholic liquor or of any drug. Any person who shall operate any motor vehicle while under the influence of alcoholic liquor or of any drug shall be deemed guilty of a crime and, upon conviction thereof, shall be punished as follows:" (then follows specific penalties for a first, second and third offense.)

For convenience we will refer to the act first quoted as the presumption statute, and the second as the alcoholic liquor statute. As indicated we accept defendant's assumption that this prosecution was brought under the alcoholic liquor statute. The charge is "* * * Helmuth R. Batterman did, then and there, willfully and unlawfully drive and operate a certain motor vehicle upon the public highways and streets of the city of Tripp, Hutchinson County, South Dakota, while he, the said Helmuth R. Batterman, was then and there under the influence of Alcoholic Liquor."

Whether the presumptions for which provision is made in the quoted presumption statute also obtain in prosecutions under the alcoholic liquor statute turns on the intention of the legislature.

These acts deal with the same subject matter, viz., driving a motor vehicle while under the influence of intoxicating liquor. The presumption statute, it is true, speaks of "any vehicle" but its title limits its scope to motor vehicles. State v. Becker, 3 S.D 29, 51 N.W. 1018. Alcohol is, of course, the intoxicating principle of liquor. Webster's

New International Dictionary, Second Edition. If we were left in doubt that by the employment of the words "alcoholic liquor" the legislature had reference to a liquor which is in fact intoxicating, that doubt would be dispelled by the title to the second act which limits its provisions to "intoxicating liquor". The acts are in pari materia.

This court has written,

> "The object of the rule of pari materia is to ascertain and carry into effect the intention of the legislature. It proceeds upon the supposition that the several statutes were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. 50 Am. Jur., Statutes, § 348."

In re Schneider's Estate, 72. S.D. 174, at page 178, 31 N.W.2d 261, at page 264.

Of the operation of the rule in dealing with **penal** statutes it has been written:

> "* * * Under this rule, statutes in relation to the same offense must be taken together and construed as if the matters to which they relate were embraced in a single statute. Similarly, where several legislative acts are part of the same system of laws providing for the prosecution of crimes, misdemeanors and offenses, naming the parties who shall prosecute, prescribing the means and methods to be pursued therein, they must be construed in pari materia. However, where two statutes are distinct in purpose, employ different remedies, and provide different penalties for offenses committed, they should not be so construed in pari materia as to employ the remedies of one for the prosecution of the other."

50 Am.Jur., Statutes, § 420, page 442.

Without citing us to supporting authority, the attorney general suggests the 1953 alcoholic liquor act is amenda-

tory of section 1 of the 1949 presumption act. Because it deals with the identical subject matter and adds the element of driving while under the influence of a drug (which seems to have been omitted from the body of the 1949 act by oversight), and provides specific penalties, the suggestion is not without support in reason or authority, even though the second act does not in terms profess to be amendatory. 82 C.J.S. Statutes § 243, p. 412. We prefer, however, to reserve decision on that contention for an occasion when it is more fully presented, and to place our decision on another ground.

It is written:

> "Where two acts in pari materia are construed together, and one contains provisions omitted from the other, the omitted provisions will be applied in the proceeding under the act not containing such provisions, where not inconsistent with the purposes of the act."

82 C.J.S. Statutes § 366, p. 813.

The presumption statute, it is true, by its wording purports to limit the rules of evidence therein prescribed to prosecutions under its first section. However, in 1953 by the alcoholic liquor statute the legislature again declared the identical conduct therein proscribed to be criminal and punishable. To hold it did not intend the same rules of evidence to obtain in a prosecution under the 1953 law would, we think, not only be unreasonable but it would involve such an absurdity as cannot be justified by a literal reading of the presumption statute. Elfring v. Paterson, 66 S.D. 458, 285 N.W. 443. Hence, we hold this contention of defendant must be overruled.

The judgment of the trial court is affirmed.

All the Judges concur.