**Sundstrom License**

*W. Edward Bushong,* for Commonwealth.
*Thomas M. Twandowski,* for appellant.

KURTZ, J., February 24, 1969.—This is an appeal from the order of the Secretary of Revenue of this Commonwealth dated December 16, 1968, suspending appellant's license to operate a motor vehicle upon the highways of the Commonwealth for a period of three months because he refused to submit to a chemical breath test as provided by the Act of July 31, 1968, P. L. ———, No. 237, sec. 1, 75 PS §624.1. That act provides in effect that any person who operates a motor vehicle upon the highways of the Commonwealth shall be deemed to have given his consent to a chemical test of his breath to determine the alcoholic content of his blood, and that if he refuses so to do upon the request of an officer who has reasonable grounds to believe that he had operated an automobile while under the influence of intoxicants, the secretary may suspend his license to operate with or without hearing. Pursuant to our obligation as the court to which the appeal has been taken, we have conducted a hearing de novo and must now decide whether appellant's operator's license is subject to suspension: Act of August 6, 1963, P. L. 509, sec. 1, 75 PS §620.

From the testimony it is found that on the early morning of November 1, 1968, an automobile oper-

ated by appellant figured in a relatively minor collision with another automobile at or near the entrance to the Pennsylvania Turnpike at King of Prussia, in Montgomery County. The Pennsylvania State Police were notified of the accident and Trooper Benjamin Grevera responded to the call. At about 12:25 a. m., the trooper observed appellant at that location, and having noticed the odor of alcohol upon his breath, his slurred speech and staggering gait, and having heard from him that he had partaken of a few alcoholic drinks, he placed him under arrest for driving while under the influence of intoxicating liquor and asked him if he would submit to an intoxication test which involved the blowing up of a balloon. This defendant refused to do, but after some discussion he agreed to submit to a blood test designed to measure the alcoholic content of his blood.

The trooper then started to take appellant to a hospital for the purpose of having the blood test performed. While on the way to the hospital appellant advised the trooper that he would not submit to the blood test until his counsel was present. The trooper then told appellant that if he did not submit to the test, his operator's license would probably be suspended.

Appellant then told the trooper that such acts were unconstitutional, that he would not submit to any test, and that he wanted to consult an attorney. The trooper took appellant to the office of a justice of the peace where he was formally charged with the operation of an automobile while under the influence of intoxicating liquor, and again advised of the possible consequences of his refusal to take the test. Appellant then repeated his request to consult a lawyer before submitting to any test, whereupon he was permitted to make telephone calls, one of which was to an attorney with whom he spoke. Following this tele-

phone conversation, appellant said nothing more on the subject of the test until he was being taken into the Montgomery County prison, some distance from the office of the justice of the peace, to which he was being committed in default of bail. At that time, about 3:30 a. m., he asked to be given the test. The test was not administered.

Appellant raises three questions upon this appeal. First, had he been arrested and charged with the offense at the time he was requested to take the test; second, did he refuse to take the test; and third, is the statute in question constitutionally valid. This would appear to be a case of first impression in this Commonwealth. We think that the questions raised must be decided against appellant's contentions.

In our consideration of the first question presented we note from the statute, section 1(a), that if any person is "placed under arrest and charged with the operation of a motor vehicle . . . while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, . . . the secretary may suspend his license . . . to operate a motor vehicle." This language calls for a consideration of the meaning of the words "arrest" and "charged" contained therein and a determination as to whether this appellant was arrested and charged within the meaning of the statute before he was requested to take the test.

There can be little doubt but that he was arrested. Under the officer's testimony which we credit, he was taken into custody by that officer, and told that he was under arrest for having operated his automobile while under the influence of alcohol. When was he "charged" with that offense within the meaning of the act? Did the charge occur at the time of his arrest or did it occur when a formal complaint under oath was made by the officer to the justice of the peace?

The Supreme Court of South Dakota had substantially the same question before it in State v. Batterman, 79 S. D. 191, 110 N. W. 2d 139 (1961). In that case the statute provided that a motorist who had been issued a South Dakota operator's license thereby gave his consent to submit to a test provided that it was "administered at the direction of a police officer . . . and that such person has been charged with a traffic violation." Although that statute does not require an arrest and charge as does the Pennsylvania statute, we believe that the observations of that court in its interpretation of it are pertinent here. At page 141 of the report cited it said: "To hold that the legislature intended a request and test could not be made until a formal charge had been filed, would be to hold that it intended to incorporate a requirement which, in a considerable volume of instances, would defeat its purpose. . . . For this reason we are of the opinion that the word 'charged' comprehends either a formal charge or the informal charge of an arresting officer."

Statutory rules of construction are also helpful upon this point. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551, directs that when the words of a statute are not explicit, the legislative intention may be ascertained by considering, inter alia: "(1) the occasion and necessity for the law; . . . (3) the mischief to be remedied; (4) the object to be attained; [and] . . . (6) the consequences of a particular interpretation." Section 52 thereof, 46 PS §552, indicates that in ascertaining the legislative intent it is presumed that the legislature did not intend an absurd result or one which is impossible of execution or unreasonable.

To now hold that a formal charge is required before a suspension can follow a refusal to submit to the test would totally defeat the purpose of this act. It was

designed to obtain what the legislature believed was competent evidence as to whether a motorist was or was not under the influence of alcohol at the time he was arrested upon a charge of operating a vehicle while in that condition. Obviously, there is a necessity for the test to be administered before the effects of the alcohol consumed by such an operator have been dissipated through delay in testing. Where incidents such as the one here described occur late at night, the facilities for the filing of formal charges promptly are not always available. In many such cases the test could not be given until the time within which it could be effective would have passed. Under such conditions the occasion and necessity for the statute would not be served; the mischief to be remedied would still not be remedied, and the consequences produced would be an enactment without substance, unless the test was given promptly. Such a result would be an absurd one indeed; one which would render the execution of the statute's provisions impossible. For these reasons we now hold that the request here made of the appellant was made after he had been arrested and charged as the statute requires.

Did he refuse to be tested? We think that he did. Here, again, there is no precedent to help us in our interpretation of the statute. Webster's Third International Dictionary, unabridged, (1966), defines a refusal as being a "rejection of something demanded, solicited or offered for acceptance." Under the facts of this case there can be little question but that this appellant rejected the officer's request that he submit to the test he described. Indeed, having expressed his refusal, first unequivocally and later conditionally, he persisted in it for a period of about two hours until it became apparent that by submitting he might be able to avoid spending the remainder of the night in jail. Whether the test could then have been given ef-

fectively does not appear in the record. However, having once formed the intention to refuse and having expressed that intention as this appellant did, we think that the refusal contemplated by the statute was an accomplished fact. To permit one charged with this offense to determine how long after his apprehension he would agree to be tested would totally destroy the effectiveness of the legislation.

In this connection, we note also that appellant expressed no change of attitude concerning his submission to the test even after he had been afforded the opportunity of talking with his attorney by telephone. This circumstance makes it clear, we think, that he had fully formed the intention not to submit and, as we have noted, when that intention was formed and expressed, the act of refusal had been completed.

We must next turn our attention to appellant's contention concerning the constitutionality of the statute. A consideration of its procedural aspects as they relate to due process of law requires that we note that section 1(a) of The Vehicle Code of April 29, 1959, as amended, supra, provides: "Any person whose license . . . is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons."

In Commonwealth v. Cronin, 336 Pa. 469, 473, 474 (1939), it was held that those provisions of The Vehicle Code which afforded such an appellant a hearing de novo upon appeal remedied any infringement of his constitutional rights resulting from the fact that a full hearing at which he could confront the witnesses against him had not been conducted prior to the imposition of the suspension from which the appeal was taken. More recently, it was held that a suspension by the Secretary of Revenue pursuant to the provisions of section 618(a)(2) of The Vehicle Code of April 29, 1959, P. L. 58, supra, which provides

for the suspension of an operator's license by that official with or without hearing in certain cases was not invalid because another section of the code, section 618(h) provides that such an operator is entitled to a hearing upon request and he is presumed to know the law relating to that right: Hamsher Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 336 (1961). In that case it was also held that even if such a hearing was required before the secretary, the deficiency in the statute was corrected by the appeal provision requiring a hearing de novo. Since this appellant has been afforded the right of appeal which he has exercised, he cannot now complain of any deprivation of procedural due process.

Neither can it be said that any other of appellant's constitutional safeguards have been violated through the application of the provisions of this statute. 88 A. L. R. 2d 1068, et seq., contains an annotation of the cases dealing with the constitutional aspects of similar statutes in other jurisdictions. We need not review those cases here. It is sufficient for us to point out they have generally been held to be constitutionally valid and have been enforced as valid exercises of state authority.

Although Pennsylvania authority adjudicating the validity of the particular statute now before us is non-existent, the questions of double jeopardy, substantive due process of law and the equal protection of the laws were considered by the Superior Court in the case of Upsey v. Secretary of Revenue, 193 Pa. Superior Ct. 466 (1960), which dealt with sections 616 and 618 of The Vehicle Code of April 29, 1959, supra. It was there held that there is no double jeopardy produced by the application of both of those sections to the same violation; neither does such an application of the statute violate the requirements of due process of law. It was also held that an administrative deter-

mination that a licensee had operated an automobile while under the influence of alcohol could be made prior to the time such a licensee had been convicted of that offense as a crime, and that there is no infringement of one's right to equal protection or to due process by such a determination. We think that the same principles are applicable here. This appellant's constitutional safeguards have not been breached.

Being satisfied as we are that the statute is constitutionally valid and that this appellant did refuse to submit to the test prescribed when requested so to do by an officer who had reasonable grounds to believe that he had operated his automobile while under the influence of intoxicating liquor, we must conclude that the appellant's operator's license is subject to suspension. Accordingly, the decision of the Secretary of Revenue in that regard is affirmed and his order of December 16, 1968, suspending the appellant's license to operate is hereby reinstated.