**William J. HOLLAND, Plaintiff,**

**v.**

**Albert M. PARKER, Commissioner of Motor Vehicles, State of South Dakota, Defendant.**

**No. CIV70–76C.**

United States District Court,
D. South Dakota, C. D.

Feb. 15, 1973.

Bright, Circuit Judge, concurred and filed opinion.

Alan L. Austin, of Austin, Hinderaker & Hackett, Watertown, S. D., for plaintiff.

A. H. Shuster, Asst. Atty. Gen., Pierre, S. D., for defendant.

Before BRIGHT, Circuit Judge, NICHOL, Chief District Judge, and BOGUE, District Judge.

## OPINION OF THE COURT

NICHOL, Chief District Judge.

This three-judge court was convened at the direction of the Eighth Circuit Court of Appeals. Holland v. Parker, 469 F.2d 1013 (8th Cir. 1972). Upon appeal from the District Court of South Dakota, the Court of Appeals ruled that plaintiff, Holland, had raised a substantial constitutional question concerning South Dakota's implied consent statute, SDCL 1967, Sec. 32–23–10 to 32–23–17, as amended, and, therefore, remanded the case for further consideration of two constitutional issues: (I) Does due process require a *lawful* arrest as a prerequisite to invoking the South Dakota implied consent statute? (II) Is the South Dakota implied consent statute unconstitutional because it fails to provide for a hearing prior to revocation of a driver's license?

For the sake of continuity the facts of this litigation, as set forth by three separate courts, will be combined.

Shortly after midnight on August 3, 1968, the plaintiff was involved in a two-car accident in Britton, South Dakota. Approximately one-half hour later a local police officer arrived at the scene and requested that both parties accompany him to the police station. There, Holland was issued a traffic summons for driving on the wrong side of the road, a misdemeanor. SDCL 1967, Secs. 32–14–10 and 32–26–1. Based upon the provisions of the South Dakota implied consent statute, Holland was asked to submit to a blood test. According to the officer, he refused the request. The plaintiff was permitted to leave the station but, on August 30, 1968, a complaint was filed and a warrant for his arrest was issued for driving on the wrong side of the road.

The Commissioner of Motor Vehicles ordered revocation of Holland's license, on August 14, 1968, for failing to submit to the blood test. Revocation was based upon the investigating official's written report. Subsequent to revocation, Holland brought suit in the Circuit Court of Marshall County contesting revocation. Relief was denied. The Supreme Court of South Dakota affirmed. Holland v. Parker, 84 S.D. 691, 176 N.W.2d 54 (1970).

Holland initiated suit in United States District Court for the Central Division of South Dakota seeking injunctive relief pursuant to 28 U.S.C.A. Secs. 2281, 1343(3) and 42 U.S.C.A. Sec. 1983. Additionally, he asked that a three-judge court decide the constitutionality of South Dakota's implied consent law, SDCL 1967, as amended, Secs. 32–23–10 to 32–23–17. The District Court ruled that it had jurisdiction to consider the injunctive relief, but that the request for a three-judge court would be denied for failing to present a substantial question of constitutionality. Holland v. Parker, 332 F.Supp. 341 (D.S.D.1971). Holland's subsequent appeal to the Eighth Circuit Court of Appeals concluded in the remand to this three-judge court. Holland v. Parker, 469 F.2d 1013 (8th Cir. 1972).

## I

### DOES DUE PROCESS REQUIRE A LAWFUL ARREST AS A PREREQUISITE TO INVOKING THE SOUTH DAKOTA IMPLIED CONSENT LAW?

Plaintiff contends that SDCL 1967, as amended, Secs. 32–23–10 to 32–23–17, are unconstitutional because, as construed by the South Dakota Supreme Court, the statutory word "charged" in the implied consent law has been interpreted to include an unlawful arrest, denying plaintiff due process of law. See Holland v. Parker, 84 S.D. 691, 176 N.W.2d 54 (1970); State v. Batterman, 79 S.D. 191, 110 N.W.2d 139 (1961); State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470 (1969). " '(T)he word "charged" comprehends either a formal charge or the informal charge of an arresting officer' and it does not have to be a valid arrest." Holland v. Parker, 84 S.D. 691, 176 N.W.2d 54, 56 (1970). The plaintiff insists that in order for South Dakota to have an implied consent law free of constitutional challenges, not only must there be an arrest requirement prior to its invocation, but that that arrest must be lawful.

As a general rule, an arrest for a misdemeanor must be made upon a warrant, unless committed in the presence of the arresting officer. 5 Am. Jur.2d Arrest Sec. 28 (1962). Since the alleged misdemeanor with which the plaintiff was charged was not committed within the presence of the arresting officer, as required by SDCL 1967, Secs. 32–2–8, 23–22–7(1), and plaintiff was not arrested by warrant on August 3, pursuant to SDCL 1967, Chapter 23–21, he claims he was unlawfully arrested on the night of the accident. See also Burlington Transportation Co. v. Josephson, 153 F.2d 372 (8th Cir. 1946); Anderson v. Sager, 173 F.2d 794 (8th Cir. 1949). This argument is not unreasonable, and there is a significant collection of opinions to buttress the plaintiff's position. Holland v. Parker, 469 F.2d p. 1015, n. 3 (8th Cir. 1972).

A majority of the states have enacted implied consent statutes and most of them have followed New York's statute in requiring an arrest as a precondition to its application. See Note, Arrest Requirement for Administering Blood Tests, 1971 Duke L.J. 601, 605; for the District of Columbia's see Pub.L. 92–519, 86 Stat. 1016–18 (Oct. 21, 1972); State v. Towry, 26 Conn.Sup. 35, 210 A. 2d 455 (Conn.1965); State v. Cruz, 21 Utah 2d 406, 446 P.2d 307 (1968); People v. Superior Court of Kern County, 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); Schutt v. MacDuff, 205 Misc. 43, 127 N.Y.S.2d 116 (1954). Schutt v. MacDuff, *supra*, provides the foundation for the later court's decisions in recognizing a need to place limitations on police officer's ability to request a blood test of licensed motorists. "(C)onferring upon police officers the right to make a request under the guise of authority concerning one's person without specific process and without lawful arrest clearly amounts to an unlawful infringement upon one's liberty." *Id.* at 127 N.Y.S.2d 127. The possibility of abuse or arbitrariness upon the part of the officer was sought to be diminished by lawful arrest requirements and constitutional due process.

As noted earlier the South Dakota Supreme Court has ruled the South Dakota implied consent statute constitutionally sufficient, requiring a formal or informal charge prior to the request for a blood test. We conclude from the statutory definition of arrest, SDCL 1967, Sec. 23–22–1, and the continued reference to the "arresting officer" in the South Dakota decisions that pertain to the implied consent law, *see e. g.*, State v. Batterman, 79 S.D. 191, 110 N.W.2d 139 (1960), and Chmelka v. Smith, 81 S.D. 40, 130 N.W.2d 423 (1964), that South Dakota conforms to the arrest requirement. *See also*, 1971 Duke L.J., *supra*, at 606, n. 32. However, even though an "arrest" is contemplated by SDCL 1967, Sec. 32–23–10, that section does not insist upon a *lawful* arrest, nor has it been interpreted to demand such.

In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Fourth Amendment was found applicable to blood tests. There, within the context of a warrantless search the Supreme Court indicated that if a blood test is to be taken incident to a legal arrest, there must be probable cause, the arrest must be lawful, and there must be an emergency:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions (beyond the body's surface) on the mere chance that desired evidence might be obtained. * * * Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned.

*Id.* at 769–770, 86 S.Ct. at 1835.

The language of the South Dakota statute provides for neither an emergency circumstance nor a lawful arrest, nor has it been interpreted to contain such.

Thus it would seem that if a police officer, implementing search and seizure procedures in accordance with constitutional proscriptions, cannot require a person to take a blood test without a warrant unless there is a lawful arrest and emergency circumstances, then neither could the officer demand that a licensee submit to the blood test, without these same constitutional prerequisites, when refusal would result in automatic loss of his license. If it were any other way, the Fourth Amendment protections would be rendered valueless since asserting them would result in a penalty potentially more severe than conviction for the alleged public offense.

Holland is correct in his assertion that he was not lawfully arrested prior to the request for his submission to a blood test. The authority of an officer to arrest, without a warrant, for a misdemeanor is narrowly proscribed by the limitation that the violation must be committed in his presence. The defendant contends that SDCL 1967, Sec. 32-33–2, gives the arresting officer authority for an arrest for a misdemeanor occurring outside his presence. We interpret that statute as establishing the procedure for completing the arrest of a driver apprehended in the violation of the motor vehicle code. It contemplates a previous arrest. Absent statutory provisions empowering law enforcement officers to effect a lawful arrest of a misdemeanor committed outside their presence, as for example in Combes v. Kelly, 2 Misc.2d 491, 152 N.Y.S.2d 934 (1956), the officers must proceed upon a complaint and warrant. *But see,* State v. Gillespie, 100 N.J.Super. 71, 241 A.2d 239 (1968); Colling v. Hjelle, 125 N. W.2d 453 (N.D.1964).

■■ Based upon the preceding reasons this court concludes that the Fourth Amendment requires a lawful arrest prior to a request for submission to a blood test. To demand that a licensed driver be subjected to a choice involving important interests, and possibly an intrusion into his body, without the procedural safeguard of a lawful arrest would be inconsistent with the teachings of Schmerber v. California, *supra.* South Dakota's statute does not provide for a lawful arrest and upon that basis is unconstitutional.

The judges of this panel are not unaware of the absolute necessity and public desire for strict police control over the drivers upon our highways. These rules concerning the taking of a blood test were born of necessity and must be substantially retained. However, they must be retained legally and not at the expense of the constitutional rights of the public. It is respectfully urged that inasmuch as South Dakota is one of the few states, if not the only state, in the United States which has failed to provide for a valid arrest prior to the request for a blood test, could so provide, if it desires, by promptly taking steps to remedy the constitutional weakness of South Dakota's implied consent law without any lapse of time which would leave our highway users unprotected.

Our reading of Holland v. Parker, remanding the case to this three-judge court, directs that both of Holland's issues be considered. Thus, even though we find the first issue constitutionally deficient, we feel directed to consider the second issue.

## II

## IS THE SOUTH DAKOTA IMPLIED CONSENT STATUTE UNCONSTITUTIONAL BECAUSE IT FAILS TO PROVIDE FOR A HEARING PRIOR TO REVOCATION OF A DRIVER'S LICENSE?

The present status of a prerevocation hearing under the South Dakota implied consent statute is succinctly expressed by the South Dakota Supreme Court in Holland v. Parker, 84 S.D. 691, 176 N. W.2d 54, 55 (1970):

In accordance with the Implied Consent Law the Commissioner is authorized to summarily revoke a person's permit to drive for one year upon an unverified oral or written report that the person, after request, refused to submit to a chemical analysis of his blood. Any person whose license is thus summarily canceled, suspended, or revoked may file a petition within thirty days for a hearing in the matter in circuit court. During the interim the permit to drive remains canceled, suspended, or revoked. The Implied Consent Law provides no means of arresting revocation of a license pending trial de novo in the circuit court. Consequently such remedy is not equally convenient, beneficial, and effective as prohibition. Clark v. Mosley, 71 S.D. 466, 25 N.W.2d 884.

The United States Supreme Court has had occasion to rule on the summary revocation by a state of its citizen's drivers license. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1970), the Court considered Georgia's Motor Vehicle Safety Responsibility Act and found it unconstitutional, "since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistent with due process, eliminate consideration of that factor in its prior hearing." Id. at 541, 91 S.Ct. at 1590. However, as applied to the present case, two other conclusions of the Court are particularly relevant. First, the Court held that licenses may not be confiscated without procedural due process:

Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969); Goldberg v. Kelly, 397 U.S. 254, [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege." Sherbert v. Verner, 374 U.S. 398, [83 S.Ct. 1790, 10 L.Ed.2d 965] (1963) (disqualification for unemployment compensation); Slochower v. Board of Education, 350 U.S. 551, [76 S.Ct. 637, 100 L.Ed. 692] (1956) (discharge from public employment); Speiser v. Randall, 357 U.S. 513, [78 S.Ct. 1332, 2 L.Ed.2d 1460] (1958) (denial of a tax exemption); Goldberg v. Kelly, supra (withdrawal of welfare benefits). See also Londoner v. Denver, 210 U.S. 373, 385–386, [28 S.Ct. 708, 713–714, 52 L.Ed. 1103] (1908); Goldsmith v. Board of Tax Appeals, 270 U.S. 117, [46 S.Ct. 215, 70 L.Ed. 494] (1926); Opp Cotton Mills v. Administrator, 312 U.S. 126, [61 S.Ct. 524, 85 L.Ed. 624] (1941).

402 U.S. at 539, 91 S.Ct. at 1589.

Secondly, the Court held that in providing procedural due process the revoca-

tion hearing must occur *prior to* the suspension.

Finally, we reject Georgia's argument that if it must afford the licensee an inquiry into the question of liability that determination, unlike the determination of the matters presently considered at the administrative hearing, need not be made prior to the suspension of the licenses. While "(m)any controversies have raged about . . . the Due Process Clause," *ibid.*, it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the termination becomes effective. *Ibid.* Opp Cotton Mills v. Administrator, 312 U.S., at 152–156, [61 S.Ct. 524, at 536–538, 85 L.Ed. 624]; Sniadach v. Family Finance Corp., *supra*; Goldberg v. Kelly, *supra*; Wisconsin v. Constantineau, 400 U.S. 433, [91 S.Ct. 507, 27 L.Ed.2d 515] (1971).

402 U.S. at 542, 91 S.Ct. at 1591.

Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972), reaffirmed these holdings. In *Fuentes* the Court further explained its concept of "emergency situations" in which procedural due process had not been required.

There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, 401 U.S., [371] at 379, [91 S.Ct. 780, at 786, 28 L.Ed.2d 113]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third,

the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food. (footnotes omitted).

407 U.S. 90–92, 92 S.Ct. 1999–2000. Thus it appears that if an "important interest", such as driver's licenses, as it had been characterized in Bell v. Burson, is to be taken from the licensee, then, except in extraordinary circumstances, procedural due process necessitates that the person whose interest is in jeopardy be afforded an opportunity to be heard *prior* to that taking.

The Bell v. Burson decision has been instrumental in motivating recent litigation concerning summary revocation procedures among several states. In Reese v. Kasab, 334 F.Supp. 744 (W.D.Pa. 1971), a three-judge federal district court held that the Pennsylvania "point system" statute, which provided for automatic suspension, without a further hearing, of the operator's license after accumulation of eleven points was unconstitutional under *Bell.* On the other hand, the Nebraska Supreme Court in Stauffer v. Weedlun, 188 Neb. 105, 195 N.W.2d 218 (1972), ruled to the contrary, holding that its point system provided procedural due process. At least one state court has found their statute permitting suspension without a prior hearing constitutional despite the *Bell* doctrine. Broughton v. Warren, 281 A. 2d 625 (Del.Ch.1971); see also Carter v. Department of Public Safety, 290 A.2d 652 (Del.1972).

The application of Bell v. Burson, *supra*, to the facts of the present case results in the conclusion that South Dakota's implied consent statute could survive constitutional challenge only if it met the requirements of an "emergency situation", justifying summary revocation of an operator's license upon refusal to submit to the blood test. At first glance it would appear that the South Dakota statute meets those emergency requirements as enunciated in Fuentes v. Shevin, *supra*. There is an important governmental and general public interest in keeping the drunk driver off the road, and therefore, if one can assume that a party who refuses the blood test is drunk and that the individual who is caught drunk once will likely be a repeater, there is certainly a legitimate interest in keeping that person from future use of the highway. Secondly, it could be argued that there is a special need for "very prompt action;" and finally the person initiating the seizure is a "government official" (a law enforcement officer).

The fault in this argument lies in the fact that the state initiates its summary action not to remove the potentially drunk driver from the highways but only if the suspect refuses to submit to the test, which is in itself an irrelevant question. Thus under South Dakota law, if a suspect takes the test and is found to be presumptively under the influence of alcohol, SDCL 1967, Sec. 32–23–7, his license is not summarily, automatically revoked and will not be revoked until he is convicted of the driving-while-intoxicated charge. SDCL 1967, as amended, Secs. 32–23–2 to 32–23–4, and 32–12–52. South Dakota cannot argue that there is a need for summary action to remove the recalcitrant, potentially drunk driver since the basis for revocation without a prior hearing is not intoxication, but refusal to take the test. If there is time to permit prerevocation adjudication for the driver found presumptively under the influence of alcohol, then there is no reason why the same opportunity should not be afforded the driver who refuses the test.

South Dakota has failed to justify its summary procedures in the case of a driver who refuses to take the test. The South Dakota statutory scheme reveals that it does not consider removal from the highways of the potentially drunk driver important enough to require summary action since the state takes such measures only upon a refusal to take the test, not on evidence presumptively indicating alcoholic influence. Thus, even under the emergency doctrine, South Dakota has failed to justify revocation without a hearing for the suspected driver who has refused the test when, if that same driver took the test, he would be permitted to retain his license and be provided a forum for his defense. Under the principles set forth in Bell v. Burson, the court concludes that South Dakota's implied consent statute, SDCL 1967, as amended, Secs. 32–23–10 to 32–23–17, is unconstitutional for not affording a motorist a hearing prior to the revocation of an "important interest", his driver's license.

Based upon the foregoing opinion this court rules for the plaintiff, Holland, and grants his injunction enjoining the Commissioner of Motor Vehicles from revoking plaintiff's driving permit pursuant to SDCL 1967, as amended, Secs. 32–23–10 to 32–23–17, or possible imposition of fine or imprisonment provided in Sec. 32–12–68.

BRIGHT, Circuit Judge (concurring).

I concur in Judge Nichol's opinion. However, I think it should be pointed out that the result of Part I of the opinion concerning the validity of Holland's arrest is largely due to South Dakota's anachronistic arrest requirements which are ill-suited to modern day traffic violations and which in many cases effectively tie the hands of the law enforce-

ment officer on the scene. As we read the plain language of South Dakota Statutes §§ 23–22–7 and 32–2–8, an officer may not make an arrest for a misdemeanor unless it occurs in his presence or unless he acquires a warrant. Thus an officer arriving on the scene *after* an accident has occurred cannot lawfully arrest anyone on a misdemeanor charge unless the unlawful conduct occurred in his presence or unless he first secures a warrant from a magistrate, no matter how difficult and time consuming that may be. Defendant argues that the South Dakota legislature, by its enactment of § 32–33–2, intended that traffic violations be considered as a separate and distinct category of misdemeanors to be accorded special procedure by law enforcement officers. The problem with this argument is that there is nothing in the cited statute which permits an officer to make a warrantless arrest for traffic violations on the basis of probable cause to believe a violation has occurred unless the violation occurred in the officer's presence. Some states have remedied this situation through enactment of appropriate legislation. *See, e. g.,* Ariz.Rev.Stat.Ann. § 13–1403 (Supp. 1972–73); N.D.Cent.Code § 29–06–15 (Supp.1971).[1]

Our decision in Part I goes no further than to hold that a valid arrest is a constitutional prerequisite of compelling a driver to submit to a blood test under S.D. Compiled Laws Ann. § 32–23–10 (Supp.1972). South Dakota, of course, need not be wedded to its present arrest-for-misdemeanor statutes.

---

1. Arizona's statute provides:

A peace officer may, without a warrant, arrest a person:

(3) When he has probable cause to believe that the person to be arrested has been involved in a traffic accident and violated any section of title 28, and that such violation occurred prior to or immediately following such traffic accident.

(4) When he has probable cause to believe a misdemeanor has been committed and probable cause to believe the person to be arrested has committed the offense. The person so arrested shall be released in conformity with the provisions of § 13–1422.

North Dakota's statute provides:

A peace officer, without a warrant, may arrest a person:

6. On a charge, made upon reasonable cause, of driving or being in actual physical control of a vehicle while under the influence of alcoholic beverages.