STATE of South Dakota, Plaintiff
and Appellant,

v.

Paul A. CHANEY, Defendant
and Respondent.

No. 12198.

Supreme Court of South Dakota.

Argued Dec. 1, 1977.

Decided Jan. 16, 1978.

LeAnn Larson Finke, Asst. Atty. Gen., for plaintiff and appellant; William J. Janklow, Atty. Gen., Pierre, on the brief.

William H. Coacher, State's Atty., Sturgis, for defendant and respondent.

DUNN, Chief Justice.

The state brings this intermediate appeal from an order suppressing blood test results entered by Judge Brandenburg of the Eighth Judicial Circuit. The sole issue is whether the chemical analysis of blood taken pursuant to SDCL 32–23–10 is admissible in a case where driving is not involved and the arrest is for actual physical control of a motor vehicle when the defendant has 0.10 percent or more by weight of alcohol in his blood. We reverse and hold that the blood test results were admissible.

The facts are uncontested. Defendant was found sitting in his car alongside a highway. The car engine was running and the headlights were on. He was arrested and given the implied consent warning, and he agreed to take the blood test. The results of the test indicated a blood alcohol level in excess of 0.10 percent.

The first trial of defendant resulted in a hung jury. A new trial date was set for May 16, 1977, but the judge granted a motion to suppress the blood test results prior to that date, and the state has taken an appeal from that order.

The relevant statutes read in part as follows:

SDCL 32–23–1:

"A person shall not *drive or be in actual physical control* of any vehicle while:
(1) There is 0.10 per cent or more by weight of alcohol in his blood * *."
(emphasis added)

SDCL 32–23–7:

"In any criminal prosecution for a violation of § 32–23–1 *relating to driving a vehicle while under the influence* of intoxicating liquor, or a violation of § 22–16–21, the amount of alcohol * * * shall give rise to the following presumptions * * *." (emphasis added)

SDCL 32–23–10:

"Any person who *operates any vehicle* in this state shall be deemed to have given his consent to a chemical analysis of his blood * * * for the purpose of determining the amount of alcohol in his blood, *as provided in § 32–23–7 * *."
(emphasis added)

The trial judge concluded that the phrase "as provided in § 32–23–7," which is found in SDCL 32–23–10, meant that the implied consent law related exclusively to "driving a vehicle" and not to offenses arising out of being in physical control of a vehicle. He found it significant that the offense of manslaughter, SDCL 22–16–21, was specifically included in the implied consent statute, and he stated that the legislature could just as easily have specifically included "actual physical control" within the implied consent statute if it had so intended. He indicated that he could have ruled the other way, but that he thought the question sufficiently meritorious to have the Supreme Court rule on it before the second trial began.

The defendant contends that this is not a matter for statutory construction because the words are plain and clear in their meaning. This court has ruled that ambiguity exists where the literal meaning of a statute leads to an absurd or unreasonable conclusion. *Elfring v. Patterson,* 1939, 66 S.D. 458, 285 N.W. 443. A literal reading of these statutes in the manner urged by the defendant would effectively prevent anyone from being convicted of being in actual physical control of a vehicle while there was 0.10 percent or more alcohol in his blood under SDCL 32–23–1(1). It would also make it very difficult for a prosecutor to obtain a conviction against a person who was under the influence of alcohol while being in actual physical control of a vehicle pursuant to SDCL 32–23–1(2). Such an absurd and unreasonable conclusion arising from a literal reading of the statutes in the manner urged by the defendant mandates a judicial inquiry into the construction of these statutes.

We agree with the trial court's conclusion that the word "operates" used in SDCL 32–23–10 is broad enough to encompass both driving and being in actual physical control of a vehicle.* See the cases cited in the annotation at 47 A.L.R.2d 570, 577 and the supplement thereto. The troublesome phrase in SDCL 32–23–10 is "as provided in § 32–23–7."

The predecessors to these statutes are found in SDC 1960 Supp. 44.0302–1 and 44.0302–2. Section 44.0302–1 included SDCL 32–23–1 and 32–23–7 in one statute. It read in part:

"44.0302–1. *Persons under influence of intoxicating liquor; blood test; presumptions.* It is unlawful and punishable for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

"In any criminal prosecution for a violation of this section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions  *  *  *."

SDC 1960 Supp. 44.0302–2 read in part as follows:

"*Implied consent to blood test.* Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as *provided in SDC 1960 Supp. 44.0302–1 *  *.*" (emphasis added)

The 1960 version of this statute, therefore, specifically applied the implied consent statute to both driving and actual physical control cases. At the time the 1967 Complied Laws were drafted, SDC 1960 Supp. 44.0302–1 was divided into two statutes— SDCL 32–23–1 and 32–23–7. It was at this

---

* In examining the legislative history of these statutes, it is interesting to note that from 1913 until 1973 there was a statute making it illegal to "operate" a vehicle while under the influence of alcohol, but that § 3, Ch. 195, S.L.1973 dropped the word "operate" and left the words "drive or be in actual physical control of."

Although we need not decide whether "drive" and "be in actual physical control" are two distinct offenses, we feel this is evidence that the phrase "drive or be in actual physical control of" was intended to be synonymous with "operate."

point that the phrase "as provided in SDC 1960 Supp. 44.0302–1" became "as provided in § 32–23–7." This change was made by the Code Commission and was not specifically made in a bill passed by the legislature. It appears, then, that the defendant's argument is based on a change made for administrative convenience by the Code Commission in drafting the 1967 Compiled Laws and not on any specific intentional act of the legislature. The legislature, however, has retained this wording in subsequent amendments to SDCL 32–23–10, and it could be argued that it has ratified the wording.

■ Although dealing with a different question, this court was called upon to interpret these same provisions in *State v. Batterman,* 1961, 79 S.D. 191, 110 N.W.2d 139. It was determined that these statutes should be read in pari materia and that:

" 'The object of the rule of pari materia is to ascertain and carry into effect the intention of the legislature. It proceeds upon the supposition that the several statutes were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions. * * * ' " 79 S.D. at 199, 110 N.W.2d at 143.

For purposes of determining legislative intent, we must assume that the legislature in enacting a provision has in mind previously enacted statutes relating to the same subject matter. As a result, the provision should be read, if possible, in accord with the legislative policy embodied in those prior statutes. Sutherland, Statutory Construction, 4th Ed., § 51.02.

■ In his memorandum opinion, the trial judge acknowledged that the phrase "as provided in § 32–23–7," which is used in SDCL 32–23–10, was open to two interpretations—first, the interpretation urged by the defendant, and second, the interpretation that the phrase refers to the presumptions arising from various amounts of alcohol in a defendant's blood. The latter interpretation is the more logical and allows for a harmonious interpretation of these statutes. As we said before, the defendant's proposed interpretation would effectively render a large segment of our laws against operation of motor vehicles by intoxicated people impotent.

It is important to note that other provisions within SDCL 32–23–10 contradict the interpretation urged by the defendant. The initial sentence applies the implied consent statute to any person who "operates any vehicle in this state * * *." What would the purpose of applying this statute to all people who operate vehicles be if the results can only be used against those arrested for driving? In addition, the statute applies the implied consent law to all operators of vehicles "provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person *for a violation of § 32–23–1.*" (emphasis added) If the legislature had intended to limit this statute to driving offenses, it had an opportunity to specifically say that in these two clauses of the statute. Instead, it seems to be the clear intent of the legislature that the implied consent law applies to anyone who is arrested for a violation of SDCL 32–23–1, which prohibits driving or being in actual physical control of a vehicle.

The defendant contends that South Dakota's version of the implied consent law, SDCL 32–23–10, was patterned after a Uniform Act which included the words "in actual physical control," yet the legislature left those words out of South Dakota's statute. According to the defendant's argument, this is evidence of a legislative intent to restrict application of the implied consent law to cases where movement is involved. The Uniform Act was adopted by the Conference of Commissioners on Uniform State Laws and the American Bar Association in 1957 and reads as follows:

" '*Section 1.* (Implied Consent of Driver of Motor Vehicle to Submit to Chemical Testing to Determine Alcoholic Content of Blood.) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of this act to a chemical test or tests, of his

blood, breath, saliva, or urine for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer *having reasonable grounds to believe the person to have been driving or in actual physical control* of a motor vehicle upon the public highways while (in an intoxicated condition) (under the influence of intoxicating liquor).'" (emphasis added) Erwin, Defense of Drunk Driving Cases, 3rd Ed., § 33.11.

SDCL 32–23–10, which was passed in its original form in 1959, reads in part:

"Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32–23–7, provided that such test is administered at the direction of a law enforcement officer *having lawfully arrested such person for a violation of § 32–23–1.*" (emphasis added)

A comparison of the two statutes indicates that the changes from the wording of the Uniform Act are changes in form, not substance. "[A] law enforcement officer having lawfully arrested such person for a violation of § 32–23–1" is, in substance, the same as "a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle * * *." None of the changes made from the Uniform Act is evidence of an intent to limit the implied consent statute to cases where the vehicle is in motion.

Reading these statutes in light of their legislative history and in keeping with the policy set down in *State v. Batterman,* supra, we hold that the implied consent statute applies to anyone arrested for driving or being in actual physical control of a vehicle in violation of SDCL 32–23–1.

Reversed.

All the Justices concur.