STATE, Respondent v. BUCKINGHAM, Appellant

(240 N.W.2d 84)

(File No. 11586. Opinion filed March 25, 1976)

**Harry W. Christianson**, Asst. Atty. Gen., Pierre, for plaintiff and respondent. **William J. Janklow**, Atty. Gen., **Max A. Gors**, Asst. Atty. Gen., Pierre, on the brief.

**Walter J. Bradsky**, of **Bangs, McCullen, Butler, Foye & Simmons**, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

Defendant was found guilty by a jury on a charge of driving while intoxicated. He appeals from the judgment of conviction, contending that the trial court should not have admitted the results of a breathalyzer test because the investigating officer had failed to place him under formal arrest, had failed to request that he submit to such a test, and had failed to advise him of his right to refuse to submit to such test and of the consequences of such refusal. We reverse.

At approximately 12:45 a.m., July 28, 1974, Officer M. R. Collins of the South Dakota Highway Patrol received a call to investigate an accident on South Dakota Highway 34 near St. Onge, Lawrence County, South Dakota. Upon arriving at the scene, Of-

ficer Collins observed defendant standing outside his damaged pickup truck. In response to the officer's questions, defendant stated that he had struck a bridge abutment after he had swerved to the right side of the road to avoid an oncoming vehicle in his lane of travel. Officer Collins observed that defendant was confused in his directions, smelled of intoxicants, and was unsteady on his feet. Based upon these observations, Officer Collins told defendant that in his opinion defendant had had too much to drink to be driving and advised defendant that he and the officer would go to Deadwood for a breathalyzer test. Officer Collins then took defendant from the scene of the accident to Deadwood, where the breathalyzer test was administered. Although Officer Collins testified that he advised defendant of his Miranda rights at the police station in Deadwood before the test was administered, the record is clear that he did not request that defendant submit to the breathalyzer test, and he did not advise him that he had the right to refuse to submit to such test, nor of the consequences of such refusal. In fact, Officer Collins testified that:

"The only time that we advise them of the implied consent law is if they refuse to take a blood test or Breathalyzer test, then the implied consent law is read to them."

We pass quickly over defendant's contention that because he was never placed under arrest he should not have been required to submit to the breathalyzer test. SDCL 23-22-1 provides that, "Arrest is the taking of a person into custody that he may be held to answer for a public offense." SDCL 23-22-9 provides that:

"When arresting a person without a warrant, a peace officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offense, or is pursued immediately after an escape."

Although it is true that Officer Collins may not have told defendant in so many words that he was placing him under arrest at the scene of the accident on a charge of driving while intoxicated, it is

clear from the evidence that Officer Collins had probable cause to arrest defendant on such a charge and that he in fact took the defendant into custody at the scene and transported him to the Deadwood police station. Although law enforcement officers should comply closely with the requirements of the statute, SDCL 23-22-9, and clearly inform a criminal suspect that he is being placed under arrest and on what charge, the failure to make such a statement did not vitiate the legal effect of the de facto arrest here where the officer in fact took defendant into his physical custody and control at the scene of the accident and made it clear to defendant that he was being taken to Deadwood for a breathalyzer test. State v. Thunder Horse, 85 S.D. 76, 177 N.W.2d 19; Application of Kiser, 83 S.D. 272, 158 N.W.2d 596.

■ Defendant contends that because Officer Collins failed to advise him of his right to refuse the breathalyzer test and of the consequences of such refusal as set forth in SDCL 32-23-11 and 32-23-12, the results of the breathalyzer test should not have been admitted in evidence.

SDCL 32-23-10 provides that:

"Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32-23-7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32-23-1.

"Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the provisions of §§ 32-23-11 and 32-23-12 in the event of such refusal with respect to the revocation of such person's driving license."

SDCL 32-23-11 provides that:

"If any person described in § 32-23-10, after request and ex-

planation as therein provided, shall refuse to submit to such chemical analysis, then such test shall not be given. In such event, the department of public safety shall revoke for one year his license to drive and any nonresident operating privilege he may have in his possession after opportunity for hearing pursuant to chapter 1-26 if hearing is demanded, it shall find that the law enforcement officer complied therewith and the refusal was made by that person."

SDCL 32-23-12 provides that:

"Any person whose license has been canceled, suspended, or revoked by the commissioner under the provisions of § 32-23-11 shall have the right to file a petition within thirty days thereafter for a hearing in the matter in circuit court in the county wherein such person was charged with the violation, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for trial de novo upon ten days' written notice to the department, and ·thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to cancellation, suspension, or revocation under the provisions of § 32-23-11."

SDCL 32-23-13 provides in part that:

"If any operator of a motor vehicle in this state who has been requested to submit to such chemical test fails to invoke the provision in § 32-23-11 which permits him to refuse to submit to such test; then the failure to invoke such provision permitting a refusal to submit to such test shall constitute consent and authority for any authorized physician, laboratory technician, registered nurse, or medical technician or medical technologist to administer such test * * *."

In State v. Batterman, 79 S.D. 191, 110 N.W.2d 139, the defendant driver, who had consented to submit to a blood test after being advised by the arresting officer that he had the right

to refuse to submit to the test, contended that because the arresting officer had failed to advise him of the consequences of such refusal the results of the test should not have been admitted at his trial. The pertinent part of the implied consent law as then in existence was substantially similar to the last paragraph of SDCL 32-23-10, supra. In rejecting defendant's contention, this court stated that:

> "From a cursory consideration of this act [now SDCL 32-23-10] it seems obvious the lawmakers did not intend one to be subject to the penalty of a revocation of his driver's privilege unless he be advised that a refusal of the request to submit to the test will subject him to that penalty. However, nothing but the letter of the act offers any support for the contention that the consent of one who had been advised of his right to refuse to submit to the test was intended to be invalidated because he had not been told that had he refused to submit he would have had his privilege to drive revoked. Because we can conceive of no reason for believing the legislature intended such a result, we are of the view that such an intention cannot soundly be implied from the mere letter of the quoted language. Therefore, we hold the contention untenable." 79 S.D. at 195, 110 N.W.2d at 141.

Some three years later, however, without citing the Batterman case this court stated that:

> "Since our statute requires it, an arresting officer is obligated to inform a driver of the consequences in the event of his refusal to submit to a test." Chmelka v. Smith, 81 S.D. 40, 44, 130 N.W.2d 423, 425.

In the case of Beare v. Smith, 82 S.D. 20, 140 N.W.2d 603, wherein the evidence revealed that the defendant driver had been fully informed of the consequences of a refusal to submit to a blood test, this court recognized the apparent conflict in the above cited statements in the Batterman and Chmelka cases and went on to say that:

"Once the conditions of the statute are met, refusal to submit to the test results in mandatory loss of license. Chmelka v. Smith * * *." 82 S.D. at 25, 140 N.W.2d at 606.

In State v. Spry, 87 S.D. 318, 207 N.W.2d 504, we cited the Batterman case for the proposition that:

"The statute (SDCL 32-23-10) makes no requirement that the subject be informed of any more than that he has the right to refuse and that his license will be suspended if he does." 87 S.D. at 324, 207 N.W.2d at 507.[1]

We conclude that the failure of the arresting officer to comply with the requirements of SDCL 32-23-10 rendered the test results inadmissible at defendant's trial. To the extent that the holding in State v. Batterman, supra, is to the contrary, that decision is overruled. In reaching this result, we look, as did the court in Batterman, to the letter of the law. It is difficult to see how the legislature could have been more specific in setting forth the procedure that arresting officers must follow when they seek to utilize the powerful evidence-gathering mechanism conferred upon them by SDCL 32-23-10, the implied consent statute. True, our statute does not expressly state that the failure of the officer to comply with the procedural steps will render the test results inadmissible, as do some implied consent statutes, see, e.g., State v. Granville, Me., 336 A.2d 861. Implicit in our implied consent statute, however, is the right to refuse to submit to a test and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal. Beare v. Smith, supra; Blow v. Commissioner, 83 S.D. 628, 164 N.W.2d 351. Also implicit in the implied consent law is the assumption that the choice to be made is of considerable impor-

---

1. A contention similar to the one raised by the defendant in the instant case was apparently not advanced in City of Sioux Falls v. Ugland, 79 S.D. 134, 109 N.W.2d 144, or in State v. Werlinger, 84 S.D. 282, 170 N.W.2d 470, wherein it was held the defendants had expressly consented to submit to the test. The record does not admit of such a finding in the instant case, however, and because the officer did not advise defendant of his right under SDCL 32-23-11 to refuse to consent to the test, defendant's failure to invoke his right of refusal cannot be deemed as constituting consent under the provisions of SDCL 32-23-13.

tance to the arrested driver. Although it may be true that to some drivers the loss of their license for a period of one year would be a penalty more severe than being convicted of the offense of driving while intoxicated, see Holland v. Parker, D.S.D., 354 F.Supp. 196, there no doubt are some who would rather suffer the loss of their license for one year than to suffer the ignominy of a conviction for driving while intoxicated, together with the adverse economic consequences such a conviction entails. If the offense of driving while intoxicated is considered serious enough to warrant the constitutional guarantee of a jury trial, Parham v. Municipal Court, 86 S.D. 531, 199 N.W.2d 501, then surely it is serious enough to require law enforcement officers to comply with the statutorily mandated procedural steps as a prerequisite to the admissibility of the results of a chemical test conducted pursuant to the implied consent law.

By holding that law enforcement officers must comply with the provisions of the implied consent statute, we do not intend in any way to impose new or onerous requirements to the conscientious, diligent application of the implied consent law. Rather, we seek only to enforce the requirements that the legislature has already imposed, and in doing so we reaffirm what this court said in Beare v. Smith, supra: that our implied consent statute was adopted to combat the menace and danger caused by drunken drivers, and that the " * * * threat to person and property from drunken drivers using the public highways is not an area for timid or tolerant application of traffic laws." 82 S.D. at 26, 140 N.W.2d at 607. Indeed, we assume that in the vast majority of cases our law enforcement officers are faithfully complying with the statute at the time they arrest motorists whom they suspect of driving while under the influence of intoxicating beverage and that the instant case represents but an aberrational departure from the norm of police conduct.

Also, we do not mean to say by our holding herein that there may not be situations where literal compliance with the requirements of SDCL 32-23-10 will not be necessary, say, for example, in the case of an unconscious or disabled driver, or in the case of the obstreperous or erudite inebriate who spurns the arresting officer's attempted recitation of the right to refuse a test and of

the consequences of such refusal. We leave those cases for another day.

We note that we are not alone in holding that the requirements of the implied consent law must be complied with as a precondition to rendering the test results admissible. For example, the Iowa implied consent statute, I.C.A. § 321B.3, requires the arresting officer to make a written request of the arrested driver to submit to a chemical test. The failure of the officer to present such a written request renders the test results inadmissible. State v. Jensen, Iowa, 216 N.W.2d 369. As recently explained by the Iowa Supreme Court: .

> "Under § 321B.3 a peace officer having reasonable cause to believe a person to have been operating a motor vehicle under the influence of an alcoholic beverage may invoke the implied consent procedure after arresting the person on that charge. In order to invoke the procedure the officer must make a written request of the person that he submit to a blood test. State v. Jensen, 216 N.W.2d 369, 372 (Iowa 1974); State v. Wallin, 195 N.W.2d 95, 96-97 (Iowa 1972).

> \*       \*       \*       \*       \*       \*

> "The State did not get over the first hurdle in this case. The officer did not make a written request to defendant that she submit to the blood test. She acceded to an oral request. We are unable and unwilling to say defendant's accession to an oral request obviated the officer's duty to make the request in writing." State v. Richards, Iowa, 229 N.W.2d 229, 233.

Although we need not decide whether we would require the same literal compliance with the provisions of our law as the Iowa Court does with respect to the Iowa statute, the total failure of Officer Collins to advise defendant in accordance with our implied consent law, in the absence of any factors making compliance with the statute impossible or unnecessary, rendered the test results inadmissible. To hold otherwise would be to read the last paragraph of SDCL 32-23-10 out of the statute.

The state contends, however, that the implied consent law aside, the holding in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, renders the test results admissible. It is true that in State v. Werlinger, supra note 1, and State v. Spry, supra, we indicated that in the light of the Schmerber decision, the results of a blood test would be constitutionally admissible despite a defendant's refusal to submit to the test. Indeed, in the Spry case, we stated, after first holding that the defendant had voluntarily consented to a blood test after being advised of his implied consent law rights, that " * * * a defendant's consent or refusal is irrelevant to the admission of the results of the blood test if the test is taken pursuant to a valid arrest." 87 S.D. at 325, 207 N.W.2d at 508. Upon further reflection, however, we deem that statement to be too broad an application of the Schmerber doctrine inasmuch as it fails to consider the implications of our implied consent law as a limitation on the constitutional authority of law enforcement officers to withdraw blood from an arrested driver. Granted that our implied consent statute antedated the decision in Schmerber, in contrast to the California implied consent statute, see Blow v. Commissioner, supra, 83 S.D. at 633, 164 N.W.2d at 353 n.1, the statute still stands and on its face imposes procedural requirements above the constitutional safeguards enunciated in the Schmerber case. Other courts have interpreted their applicable statutes as constituting a limitation upon the Schmerber doctrine. In discussing the Schmerber case with respect to the Illinois consent statute (which required actual consent and did not contain an implied consent provision), the Illinois Supreme Court stated, "Thus, absent a more limiting statutory provision, the taking of a blood sample does not require the consent of the donor." People v. Todd, 59 Ill.2d 534, 545, 322 N.E.2d 447, 453. The Illinois Court then went on to hold that because the Illinois statute required actual consent, a chemical test taken in the absence of such consent was not rendered admissible by the Schmerber case.

Likewise, the Colorado Supreme Court has stated that:

"The implied consent law, however, gives rights which are greater than those required by due process. It specifically provides that at the time of the request to

take the test, the officer shall inform the licensee orally and in writing 'of his rights under the law and the probable consequences of refusal to submit to such a test.' " Vigil v. Motor Vehicle Division, Colo., 519 P.2d 332, 334.

In holding inadmissible the results of a blood test performed on a blood sample taken over defendant's protest, the Oregon Court of Appeals stated:

"No constitutional issue is presented. Nothing in the United States or Oregon constitutions would prohibit a policeman who has probable cause to believe a person was driving under the influence of alcohol from requiring that person to submit to a chemical test of his blood, breath, saliva, urine, etc. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); (other citations omitted) As in other situations where the police have probable cause to make a search, the driver's consent or lack thereof would be irrelevant. Schmerber v. California, supra.

"However, in adopting the Implied Consent Law, the legislative assembly did not fix the statutory limits at the constitutionally permissible limits. Instead, it is apparent that in some instances drivers have a statutory right under the Implied Consent Law to refuse to submit to any and all chemical sobriety tests." State v. Annen 12 Or.App. 203, 504 P.2d 1400, 1401.

See also State v. Stover, Or., 531 P.2d 258. For an apparently contrary holding, see People v. Superior Court, 6 Cal.3d 757, 100 Cal. Rptr. 281, 493 P.2d 1145, which has been interpreted by a lower court as authorizing law enforcement officers to obtain and utilize chemical analyses pursuant to Schmerber notwithstanding the failure of the officers to comply with the requirements of California's implied consent statute. See People v. Brannon, 32 Cal.App.3d 971, 108 Cal.Rptr. 620, and cases cited therein.

We hold that SDCL 32-23-10 imposes requirements beyond those mandated by the Schmerber case. To hold otherwise would be to permit law enforcement officers to render SDCL 32-23-10

nugatory at their whim. If the legislature desires that a motorist arrested on a charge of driving while intoxicated shall no longer have the right to choose between consenting to a test and losing his license, then presumably the legislature will say so in terms as clear as it used in spelling out a motorist's rights under SDCL 32-23-10. There is certainly nothing in the amendments adopted in response to the decision in Holland v. Parker, supra, that indicates any such intention on the part of the legislature. See, e.g., SDCL 32-23-11, as amended by Ch. 195, § 13, S.L.1973. To the extent that our decisions in State v. Werlinger and State v. Spry, supra, express views contrary to those expressed herein with respect to the admissibility of test results in driving while intoxicated cases, those decisions are overruled.[2] We note that in the Werlinger case the defendant had consented to the test (but see State v. Bosanco, 87 S.D. 605, 213 N.W.2d 345), and the Spry case involved a charge of second degree manslaughter under the provisions of SDCL 22-16-21. We need not decide here, nor did we need to in the Spry case, whether compliance with SDCL 32-23-10 is required as a condition precedent to the admission of test results in a prosecution under SDCL 22-16-21 or whether compliance with the requirements of Schmerber will suffice to render the results admissible.[3]

The trial court should not have admitted the results of the breathalyzer test over defendant's objection. Accordingly, the judgment of conviction is reversed.

DUNN, C. J., and COLER, J., concur.

WINANS, J., dissents.

WINANS, Justice (dissenting).

---

2. We do not mean to overrule that portion of the Spry decision that holds that defendant Spry's consent was obtained after he had been informed of his implied consent law rights and that it was not necessary for the law enforcement officers to advise him that someone had been killed in the accident that led to his arrest.

3. See State v. Stover, supra, 531 P.2d at 266 n.10, for a discussion of the amendment to the Oregon implied consent statute that apparently permits test results not obtained in compliance with the implied consent law to be introduced in cases other than prosecutions for driving while intoxicated.

I am dissenting from the majority opinion for reasons herein set forth. I do not, however, dissent from the majority opinion so far as the holding on the arrest issue. I agree there was a valid arrest and that to me is the key point on the issue of the use of the breathalyzer test on the charge of driving while intoxicated.

I do not accept as true the statement in the majority opinion that defendant was not requested to submit to the breathalyzer test, because the officer did tell defendant that he (defendant) had had too much to drink to be driving and advised defendant that he and the officer would go to Deadwood for a breathalyzer test. The officer did not "advise him that he had the right to refuse to submit to such test, nor of the consequences of such refusal." This is somewhat similar to State v. Batterman, 79 S.D. 191, 195, 110 N.W.2d 139, 141, where this Court said "[t]he defendant was informed that he had a right to refuse to submit." In our case he was not so advised. The Court further said, "Hence, whether the legislature intended an express consent to be invalid, if received in the absence of an explanation of the penalty attached to a refusal to submit, is the narrow question before us." In our case the defendant was not advised of the penalty. Our case is therefore somewhat like Batterman, supra, and somewhat different. We have a valid arrest and a lack of explanation by the officer. In Batterman no question appears relative to the arrest procedure, and a partial explanation given by the arresting officer. In both cases the charge is DWI. The conviction in Batterman was affirmed.

The majority opinion states that three years later, without citing Batterman, this Court stated:

"Since our statute requires it, an arresting officer is obligated to inform a driver of the consequences in the event of his refusal to submit to a test." Chmelka v. Smith, 81 S.D. 40, 44, 130 N.W.2d 423, 425.

I believe in Chmelka v. Smith. I have no quarrel with it. In Chmelka the proceeding was upon a petition for determination whether driver's permit was subject to suspension or revocation for violation of Implied Consent Law. It is plain that the Court

said it was, but also found that the explanation had been made and dismissed the petition. There was no need to cite Batterman. Unlike Batterman, this was not a criminal action, and in Chmelka the Court going no further than upholding the consequence the statutes provided where the officer might not make them known to the suspected drunk driver. For all we know Chmelka may or may not have been tried on the DWI. It is possible, though speculative, he may have been tried and found not guilty of DWI, or just the reverse.

Chmelka is also authority for the following views as to the rights and privileges of driving.

"The operation of a motor vehicle upon the public highways is not a natural or unrestricted right. It has been variously denominated as a privilege, a privilege in the nature of a right, an important right under our present mode of living, and as a vested right. Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 A.L.R.2d 1055; In re Wright, 228 N.C. 584, 46 S.E.2d 696; Thompson v. Thompson, N.D., 78 N.W.2d 395; Application of Goodwin, 173 Misc. 169, 17 N.Y. S.2d 426. In any event, a permit or license to operate a motor vehicle, once issued, is of substantial value to its holder and more especially to persons who depend for their livelihood upon the operation of a motor vehicle. Even if the driving of a motor vehicle upon the public highways be termed a mere privilege, a driver's permit or license may be suspended or revoked only in the manner and on grounds provided by law. 60 C.J.S. Motor Vehicles § 160; annotation, 88 A.L.R.2d 1064." Chmelka v. Smith, supra, 130 N.W.2d at p. 424.

Beare v. Smith, 82 S.D. 20, 140 N.W.2d 603, is consistent with Batterman, supra, and with Chmelka, supra. At least it does not uphold the doctrine we are invited to by the majority opinion in Buckingham. The action in Beare v. Smith is a proceeding to review revocation of driver's license and that is all. It plainly holds that such an action is "separate and distinct" from a criminal trial. It even cites Batterman to the effect that results of

a blood test were held admissible in the criminal prosecution although the officer "did not explain the penalty attached to a refusal to submit."

> "The right to operate a motor vehicle upon a public street or highway is not a natural or unrestricted right but a privilege which is subject to reasonable regulation under the police power of the state in the interest of public safety and welfare. Chmelka v. Smith, 81 S.D. 40, 130 N.W.2d 423. The proceeding to determine or review the propriety of the cancellation, suspension, or revocation of a driver's license is separate and distinct from a criminal trial on a charge of driving while under the influence of intoxicating liquor or drugs, and the efficacy of the revocation by the Commissioner does not hinge on whether there is a conviction or acquittal on a criminal charge related to the test. Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 A.L.R.2d 1055. In Chmelka in a proceeding by the Commissioner we said: 'Since our statute requires it, an arresting officer is obligated to inform a driver of the consequences in the event of his refusal to submit to a test.' Contrariwise, in State v. Batterman, 79 S.D. 191, 110 N.W.2d 139, the results of a blood test were held admissible in a criminal prosecution, although the officer did not explain the penalty attached to a refusal to submit." Beare v. Smith, supra, 140 N.W.2d, at 606.

In State v. Spry, 87 S.D. 318, 207 N.W.2d 504, we said that SDCL 32-23-10

> "provides in substance that when a police officer has reasonable grounds to believe that a person has been driving under the influence of alcohol and has been charged with a traffic violation, the officer can request that such person submit to a chemical analysis of his blood. It also provides that consent to submit to the test is implied from the fact of his driving."

In a footnote we cite

"A three judge federal court recently held in Holland v. Parker, D.C., 1973, 354 F.Supp. 196, that the South Dakota implied consent statute is unconstitutional *to the extent* that it permits a police officer to demand that a subject submit to a blood test without *first making a lawful arrest*." (emphasis supplied)

Spry was a criminal prosecution and we said "The issue before the federal court in Holland was the right to revoke Holland's license under the circumstances. This is not the issue in our case." Then most importantly we held,

"Aside from all that, however, we hold that a defendant's consent or refusal is irrelevant to the admission of the results of the blood test if the test is taken pursuant to a valid arrest. Cf. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Holland v. Parker, supra."

The Holland v. Parker, supra, case was an attempt to revoke a license to drive for failing to submit to the blood test. Parenthetically we have since amended our statutes to take care of the objections made in Holland. The three judge Federal Court stated in their opinion:

*"Thus it would seem that if a police officer, implementing search and seizure procedures in accordance with constitutional proscriptions, cannot require a person to take a blood test without a warrant unless there is a lawful arrest* and emergency circumstances, then neither could the officer demand that a licensee submit to the blood test, without these same constitutional prerequisites, when refusal would result in automatic loss of his license. If it were any other way, the Fourth Amendment protections would be rendered valueless since asserting them would result in a penalty potentially more severe than conviction for the alleged public offense." (emphasis supplied)

It also quoted from Schmerber,

"In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Fourth Amendment was found applicable to blood tests. There, within the context of a warrantless search the Supreme Court indicated that if a blood test is to be taken incident to a legal arrest, there must be probable cause, the arrest must be lawful, and there must be an emergency:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions (beyond the body's surface) on the mere chance that desired evidence might be obtained. * * * Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned.

Id. at 769-770, 86 S.Ct. at 1835, 16 L.Ed.2d at 917.

The language of the South Dakota statute provides for neither an emergency circumstance nor a lawful arrest, nor has it been interpreted to contain such."

Among other things the Court in Holland concluded that the

"Fourth Amendment requires a lawful arrest of a motorist prior to request for submission to a blood-alcohol chemical analysis; police officer cannot demand that a licensed driver submit to a blood test, without constitutional prerequisite of either lawful arrest or emergency circumstance, when motorist's refusal would result in automatic loss of his license." (see syllabus 2)

The question in Schmerber v. State of California, 1966; 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; was concerned with the admissibility of a blood sample analysis where such blood had been withdrawn despite defendant's refusal, on the advice of his counsel, to consent to the test. Defendant had been arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driv-

ing. At the direction of a police officer a blood sample was then withdrawn from defendant's body by a physician at the hospital. It would make this already too long dissent, even longer to analyze Schmerber, and it had vigorous dissents. However, the Court allowed the analysis of the blood sample, even under such circumstances, admitted in evidence. It simply held that defendant's rights under the Constitution had not been violated. For instance, it held that his claim of privilege under the Fifth Amendment was not violated. It held that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question did not involve compulsion to these ends.

Quoting further from Schmerber:

" '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.' [Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021] 218 U.S., at 252-253, 31 S.Ct., at 6, 54 L.Ed., at 1025.

It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the

> privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

SDCL 32-23-11 provides:

> "If any person described in § 32-23-10, after request and explanation as therein provided, shall refuse to submit to such chemical analysis, then such test shall not be given. In such event, the department of public safety shall revoke for one year his license to drive and any nonresident operating privilege * * *."

There is no language in this section which would make the chemical analysis in our case not permissible evidence in the criminal action. The officer told him he was going to take him to Deadwood for a breathalyzer test. What the officer failed to tell him, and what defendant contends, is he wasn't advised of his right to refuse the breathalyzer test, and the consequences of such refusal. The consequences as I see it are contained in SDCL 32-23-10 and 32-23-11 and that has to do with the revocation of the person's driving license, and not to any privilege to drive while he is drunk on the public highways of the State.

I believe that by the operation of a vehicle the defendant should be deemed to have given his consent subject, of course, to his right to refuse and have his right or privilege to drive taken from him. This must be especially so where we violate no constitutional right of his.

In summary I would hold that the breathalyzer results are admissible evidence in the DWI trial. The arrest was lawful and the implied consent law is sufficient to justify the test, with or without defendant's consent. This is consistent with Schmerber at the federal level and with Spry in our state. It is also consistent with Holland.

I would not create a new exclusionary rule of law under the facts of this case.

It is not true that the last paragraph of SDCL 32-23-10 places a restriction on the authority of law enforcement officers to give a breathalyzer test on those lawfully arrested for a violation of SDCL 32-23-1, nor is there any constitutional provision to the contrary. It can only be said, on the contrary, that the last paragraph of SDCL 32-23-10 only places a restriction upon the authorities whereby they cannot use Defendant's refusal, or his lack of being informed of his right of refusal and the results of such refusal if he makes one, to take a test as evidence sufficient to trigger the one year license suspension.