STATE, Respondent v. OSWALD, Appellant

(241 N.W.2d 566)

(File No. 11659. Opinion filed April 29, 1976)

**James R. Haar, Goetz, Hirsch, Haar & Blackburn**, Tripp, for defendant and appellant.

**William J. Janklow**, Atty. Gen., **Peter H. Lieberman**, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

WINANS, Justice.

Defendant Jerauld Ray Oswald was convicted in a jury trial of driving while under the influence of intoxicating liquor and has appealed to this Court, raising questions with regard to the trial court's refusal of two requested instructions and with regard to the admissibility of testimony concerning his exercise of a statutory right not to take a blood test. Because we find that a requested instruction was refused to the prejudice of Defendant and because we also find that the testimony in question was incorrectly allowed we reverse the lower court.

Appellant Oswald was arrested for driving while intoxicated on November 16, 1974, after he had drawn the attention of Police Chief Wagner to himself at Menno, South Dakota. Chief Wagner advised Oswald of his rights under our state's implied consent statute, apparently two different times that night and each time Oswald flatly refused to submit to a blood test. A trial was held on February 18, 1975, in circuit court at which Oswald did not testify. Over Appellant's objections two witnesses were permitted to state that Oswald had refused to take the blood test. Because of the testimony that had been allowed concerning Defendant's exercise of his statutory right not to take a blood test, and because Oswald did not testify, Defendant's counsel requested that the following instructions be given the jury:

"No. 9 Every Defendant in a criminal case has the absolute right not to testify. You must not drawn (sic) any inference of guilt against the Defendant because he did not testify. He is not required to prove himself innocent, or put in any evidence at all upon that subject. The fact that the Defendant has not testified in this case raises no presumption against him, and you must give no thought to the fact that the Defendant did not testify in his own behalf in this case, in arriving at your verdict."

(This appears to be a combination of all of Instruction 1-17 and all but one sentence of Instruction 1-17 [alternate form] of the South Dakota Criminal Pattern Jury Instructions.)

"No. 12 You are further instructed that the laws of this State grant until (sic) the accused a statutory right to refuse to submit to a blood test."

Both requested instructions were refused. The jury found Oswald guilty and he was sentenced to eighteen months in the state penitentiary.

### Right to Exclude Evidence of Refusal
### to Take Blood Test

Appellant's counsel on appeal suggests that Oswald has a right under both the United States Constitution and the South Dakota Constitution to refuse to submit to a blood test and a right not to have testimony concerning such a refusal admitted at trial. He also contends that such rights are assured Defendant by our statute, SDCL 32-23-10.

Article Five of the Amendments to the United States Constitution provides in part that:

"No person . . . shall be compelled, in any criminal case to be a witness against himself . . ."

Article VI, § 9 of the South Dakota Constitution states:

"No person shall be compelled in any criminal case to give evidence against himself or be twice put in jeopardy for the same offense."

SDCL 32-23-10 is our implied consent law:

"Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32-23-7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32-23-1.

"Such person shall be requested by said officer to submit to such analysis and *shall be advised by said officer of his right to refuse to submit to such analysis* and the provisions of §§ 32-23-11 and 32-23-12 in the event of such refusal with respect to the revocation of such person's driving license."*

Because we feel that this matter is adequately disposed of on statutory grounds we find no need to reach the constitutional questions.

Quite recently in State v. Buckingham, 1976, 90 S.D. 198, 240 N.W.2d 84, Mr. Justice Wollman for this Court observed:

---

* 32-23-11. "If any person described in § 32-23-10, after request and explanation as therein provided, shall refuse to submit to such chemical analysis, then such test shall not be given. In such event, the department of public safety shall revoke for one year his license to drive and any nonresident operating privilege he may have in his possession after opportunity for hearing pursuant to chapter 1-26 if hearing is demanded, it shall find that the law enforcement officer complied therewith and the refusal was made by that person."

32-23-12. "Any person whose license has been canceled, suspended, or revoked by the commissioner under the provisions of § 32-23-11 shall have the right to file a petition within thirty days thereafter for a hearing in the matter in circuit court in the county wherein such person was charged with the violation, and such court is hereby vested with jurisdiction and it shall be its duty to set the matter for trial de novo upon ten days' written notice to the department, and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to cancellation, suspension, or revocation under the provisions of § 32-23-11."

"Implicit in our implied consent statute, however, is the right to refuse to submit to a test and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal. (citations omitted) Also implicit in the implied consent law is the assumption that the choice to be made is of considerable importance to the arrested driver. Although it may be true that to some drivers the loss of their license for a period of one year would be a penalty more severe than being convicted of the offense of driving while intoxicated, (citation omitted), there no doubt are some who would rather suffer the loss of their license for one year than to suffer the ignominy of a conviction for driving while intoxicated, together with the adverse economic consequences such a conviction entails. If the offense of driving while intoxicated is considered serious enough to warrant the constitutional guarantee of a jury trial, (citation omitted), then surely it is serious enough to require law enforcement officers to comply with the statutorily mandated procedural steps as a prerequisite to the admissibility of the results of a chemical test conducted pursuant to the implied consent law."

In the case before us the Defendant was informed of his statutorily guaranteed right and, for whatever reason we do not know, he elected not to submit to the test. Certainly it is unfair to create by statute a right not to submit to a chemical test and to allow the accused to exercise that right and then in open court before a jury to permit testimony concerning that refusal which can all too easily work in the minds of the jury members to the prejudice of the defendant.

Some twenty years ago the Supreme Court of our sister state to the north had before it a case similar to the one we now deal with. The reasoning of that court, though their statute may differ from ours, is appropriate here:

"Whether the statute implies that evidence of a refusal to take a test may be not received in evidence

against a defendant is a question that is not without difficulty. We are of the opinion, however, that when the legislature granted an accused person a choice of whether he would submit to such a test, it intended that the choice should be absolutely free and not encumbered by a liability. If the fact that an accused person chooses not to take a test can be put in evidence and argued to the jury as evidence of guilt, then the statute places the defendant in a position where willy-nilly, he must risk providing evidence for the prosecution by submitting to a test or certainly provide it by refusing to take one, although his reason for refusal may have no relation to the question of guilt or innocence. * * * Thus the policy of our law appears to be that a defendant may claim a privilege granted by statute or the constitution, without being subjected to the liability that his exercise of the right may be used against him." State v. Severson, 1956, N.D., 75 N.W.2d 316.

In an Oklahoma case a witness testified that he thought the defendant was drunk "because he was red faced and he refused to take the test." A police officer also testified that the defendant refused to take the (intoximeter) test. There the Oklahoma Court noted:

" * * * the defendant's refusal to take the test was used by the state in its case in chief for purely prejudicial purposes. The accused's refusal should have ended the inquiry on the subject. It ill behooves the courts to say you have a right to refuse to do something, which may prove either beneficial or detrimental to you, and yet, notwithstanding your right so to do, we will permit your refusal to be shown and enable the state to destroy your right and achieve indirectly by innuendo what it was prevented by law from accomplishing directly. We can conceive of no greater inconsistency." Duckworth v. State, 1957, Okl.Cr., 309 P.2d 1103 at 1105.

In a New York case testimony was given at trial that the defendant refused permission to a physician to take a blood sample for

the determination of alcoholic content. Mr. Justice Coon for the Appellate Division of that Supreme Court said, after setting out pertinent testimony:

"That this was damning evidence against the defendant, when practically the sole issue was his intoxication, cannot be denied. The question is whether it was competent for any purpose. We think not.

The Legislature has provided that evidence of the alcoholic content of the blood may be received in evidence. (citation omitted). It has also recognized a person's right to refuse the test. Vehicle and Traffic Law, § 71-a. * * * The courts of this State have long and consistently held that under our self-incrimination laws the receipt of evidence in a criminal trial of a defendant's complete silence or refusal to answer is reversible error. (citations omitted). This has been on the theory that the fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him." People v. Stratton, 1955, 286 App.Div. 323, 143 N.Y.S.2d 362.

We are also aware that our neighboring state of Minnesota has refused to allow admission of testimony on an accused's refusal to submit to chemical testing for purposes of determining alcoholic content, at least partially, on constitutional grounds. See State v. McCarthy, 1960, 259 Minn. 24, 104 N.W.2d 673 and State v. Andrews, 1973, 297 Minn. 260, 212 N.W.2d 863. While we are not necessarily in disagreement with these opinions we do not think it required in the instant case to go that far. We have a South Dakota statute which grants an absolute right to an arrested person to refuse to submit to testing to determine the alcoholic content of his or her blood, albeit not without certain consequences. But the consequences of such refusal are provided by statute and they nowhere include the admissibility of evidence of such refusal in court on a DWI charge. Defendant Oswald made timely objection to the introduction of testimony concerning his refusal to submit to the blood test and the testimony in question ought not to have been let in. Admission of evidence of Defend-

ant's refusal was reversible error.

### Refused Instruction on Defendant's
### Failure to Testify

As we have earlier indicated, Defendant Oswald exercised his right not to testify at his DWI trial. His counsel proposed a jury instruction, compiled from our pattern instructions, on that point and the trial judge refused it.

The privilege against self-incrimination is both constitutional and statutory in this state. SDCL 23-44-1 provides:

> "In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of any crime, before any court or committing magistrate, the person charged shall, at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him."

In interpreting this statute this Court has stated:

> "We think it is clear that a defendant's failure to testify in his own behalf, to deny or explain charges made against him, when the jury know he is present, hears the charges, and could testify, would raise in the minds of nearly all jurors a presumption of his guilt, or at least a prejudicial presumption of something damaging to defendant that he wishes to conceal.
>
> \* \* \* \* \* \*
>
> We think the defendant had the right to have this presumption of law in his favor, coupled with the fact that he did not testify, given to the jury in a proper instruction substantially as the law had coupled it in section 4879 (now SDCL 23-44-1), and that the charge as given did not substantially cover the charge requested."
> State v. Wimpsett, 1922, 46 S.D. 6, 189 N.W. 983.

In State v. Wells, 1928, 53 S.D. 446, 221 N.W. 56, we again dealt with an instruction on self-incrimination similar in substance to the one before us now and there we held again that refusal to give such an instruction which had been requested by the defendant was reversible error.

 This has been our law and it continues to be so. A defendant has both a federal and a state constitutional privilege against self-incrimination and the state privilege has in South Dakota also been made statutory. The exercise of this privilege, however, is not without peril and counsel act prudently in seeking from the court jury instructions which attempt to negate in the minds of the jury members any unfavorable inferences which failure to take the stand may arouse. When the instruction is a correct statement of the law and when it has a bearing on the case before the jury the defendant has a right to have the instruction properly requested given to the jury, unless, of course, the sense of the instruction is sufficiently covered in another instruction. Failure to honor such a request is, as we have held in Wimpsett, supra, reversible error.

### Rejected Instruction on Defendant's Right to Refuse a Blood Test

In addition to refusing the requested instruction on Defendant's failure to testify the trial judge also refused Defendant's requested instruction on his right not to take a blood test. Although the issue is somewhat mooted by our foregoing treatment of the erroneous admission of testimony on Oswald's twice refusing the blood test, we think it best to make a brief observation.

In State v. Wimpsett, supra, this Court quoted with approval the Iowa Supreme Court in State v. Carnagy, 1898, 106 Iowa 483, 76 N.W. 805:

"'The instruction requested contained a correct statement of the law, and the defendant had the right to have it given. It related to a special feature of the case, upon which the giving of instructions was discretionary if not demanded, but upon which the law should have

been stated when requested by the accused, who had brought himself within its provisions.'"

Defendant's proposed instruction No. 12 is not an incorrect statement of the law, although it could well be enhanced by further elaboration. In circumstances other than those before us we anticipate that counsel might have a right to have similar instruction given the jury, but we leave any decision on that question to turn on the facts of the case while keeping in mind the quote from Carnagy.

In closing we note that we are in agreement with Mr. Chief Justice Traynor when he observed that "[i]n a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention." People v. Sudduth, 1966, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401. Nevertheless, our system of justice demands that to achieve these ends courts cannot dispense with the fundamentals of fairness for the accused. Since, for the reasons stated, we have found that Jerauld Ray Oswald received less than a fair trial the decision of the circuit court is reversed and its judgment vacated.

DUNN, C. J., and WOLLMAN and COLER, JJ., concur.