STATE of South Dakota, Plaintiff
and Appellant,

v.

Mason Henry NEVILLE, Defendant
and Appellee.

No. 13260.

Supreme Court of South Dakota.

Argued Sept. 28, 1981.

Decided Dec. 2, 1981.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

David R. Gienapp of Arneson, Issenhuth & Gienapp, Madison, for defendant and appellee.

DUNN, Justice.

The State appeals from an order of the circuit court suppressing evidence of defendant Mason Henry Neville's refusal to submit to a blood alcohol test. We affirm.

Neville was arrested for driving while intoxicated on July 19, 1980, after he had drawn the attention of two Madison, South Dakota police officers by failing to stop for a stop sign. Neville was given two field sobriety tests and was then arrested. After advising him of his *Miranda* rights, the arresting officer asked Neville to submit to a blood alcohol test and warned him that his failure or refusal to submit to the test may result in the revocation of his driver's license. Neville refused to submit to the blood test, and subsequently made a motion to suppress any and all evidence of his refusal. At the suppression hearing, prosecution witnesses testified to his refusal and to his statement "I'm too drunk, I won't pass the test." The circuit court ordered the evidence of Neville's refusal to submit to the blood alcohol test suppressed, finding that SDCL 32–23–10.1 was unconstitutional; that the arresting officers failed to advise Neville that the refusal evidence could be used against him at trial; and that the refusal was irrelevant to the issues before the court.

The statute in question, SDCL 32–23–10.-1, provides that:

> If a person refuses to submit to chemical analysis of his blood, urine, breath or other bodily substance, as provided in § 32–23–10, and that person subsequently stands trial for driving while under the influence of alcohol or drugs, as provided in § 32–23–1, such refusal may be admissible into evidence at the trial.

Prior to the enactment of this statute in 1980, this court held that SDCL 32–23–10 conferred on a defendant a statutory right to refuse to submit to an alcohol analysis test and that evidence of a defendant's refusal would not be admissible in a criminal proceeding. *State v. Oswald*, 90 S.D. 342, 241 N.W.2d 566 (1976); *State v. Buckingham*, 90 S.D. 198, 240 N.W.2d 84 (1976). In *State v. Oswald, supra*, we stated: "Certainly it is unfair to create by statute a right not to submit to a chemical test and to allow the accused to exercise that right and then in open court before a jury to permit testimony concerning that refusal which can all too easily work in the minds of the jury members to the prejudice of the defendant." 90 S.D. at 346, 241 N.W.2d at 569. To reach this conclusion, we relied on *State v. Buckingham, supra*, wherein we stated: "Implicit in our implied consent statute, however, is the right to refuse to submit to a test and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal." 90 S.D. at 204, 240 N.W.2d at 87.

■ At the time *Oswald* and *Buckingham* were decided by this court the applicable statute, while providing that the individual had a right to refuse to take the test,

did not expressly state that such a refusal would be admissible in evidence in a criminal proceeding as does SDCL 32–23–10.1. Therefore, the question before us today is whether SDCL 32–23–10.1 is a violation of Neville's federal and state constitutional privilege against self-incrimination. U.S. Const.Amend. V; S.D.Const. art. VI, § 9. We find that it is.

All presumptions are in favor of the constitutionality of a statute until the contrary is shown beyond a reasonable doubt. *State v. Brown,* 296 N.W.2d 501 (S.D.1980); *Crowley v. State,* 268 N.W.2d 616 (S.D.1978); *State v. Strong,* 90 S.D. 652, 245 N.W.2d 277 (1976). This presumption results in a heavy burden being placed on the assailant. *State v. Brown, supra; State Theatre Co. v. Smith,* 276 N.W.2d 259 (S.D.1979).

In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that withdrawal of blood from a defendant for chemical analysis, although compelled, does not constitute evidence of a testimonial or communicative nature. The Court further held that the Fifth Amendment privilege against self-incrimination was not violated by the procedure. It can be implied that a defendant does not have a federal constitutional right to refuse to take a blood test.

The Supreme Court, however, expressly declined in *Schmerber* to decide the question now before us. In *Schmerber* the petitioner had refused a police request that he take a breath test for alcohol content. Evidence of his refusal was admitted at trial without objection. He contended on appeal that the introduction of evidence relating to his refusal to submit to the breath test was a denial of his privilege against self-incrimination. The Court did not reach this question, since petitioner failed to object to the introduction of the evidence at trial. However, it did indicate in a footnote that incriminating evidence resulting from the refusal to submit to an alcohol test may be "an unavoidable by-product of the compulsion to take the test .... If it wishes to compel persons to submit to such attempts to discover evidence, the State may have to forgo the advantage of any *testimonial* products of administering the test—products which would fall within the privilege." The Court then stated that "general Fifth Amendment principles" would be applicable to the introduction of refusal evidence and comments made by the prosecutor in closing argument upon his refusal. 384 U.S. at 765–66 n. 9, 86 S.Ct. at 1833, 16 L.Ed.2d at 916–17 (emphasis in original).

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court summarized its discussion of the Fifth Amendment privilege against self-incrimination as follows:

> To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth.

384 U.S. at 460, 86 S.Ct. at 1620, 16 L.Ed.2d at 715 (citations omitted). The Court reaffirmed this statement in *Schmerber* noting that "the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications[.]" The Court recognized, however, that "the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." 384 U.S. at 763–64, 86 S.Ct. at 1832, 16 L.Ed.2d at 916.

To determine whether the Fifth Amendment privilege against self-incrimination applies to refusal evidence, this court must first examine whether a defendant's refusal to take a chemical analysis test is a communicative act involving that person's testimonial capacities or if it is real or physical evidence which does not fall within the privilege. Evidence of a defendant's refusal to submit to a blood test is relevant only

because it infers that defendant refused to take the blood test because of his fear as to whether he would pass it. *Dudley v. State*, 548 S.W.2d 706 (Tex.Crim.App.1977). A defendant's silence or refusal to submit to a requested blood test is a tacit or overt expression and communication of defendant's thoughts. *Dudley v. State, supra.* To this extent the evidence may be characterized as "communicative or testimonial" rather than "real or physical" evidence that simply describes an existing physical characteristic. *People v. Thomas*, 46 N.Y.2d 100, 412 N.Y. S.2d 845, 385 N.E.2d 584 (1978); *Gay v. City of Orlando*, 202 So.2d 896 (Fla.1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1052, 19 L.Ed.2d 1149 (1968).

■ The inference of inability to pass the blood test is not similar to circumstantial evidence of consciousness of guilt such as escape from custody, false alibi, flight or suppression of evidence as was held by the California Supreme Court in *People v. Sudduth*, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1966). A defendant is not exercising a statutory right in those instances, whereas here there is an absolute right under South Dakota law to refuse to submit to the blood test. SDCL 32–23–10; *State v. Oswald, supra; State v. Buckingham, supra.* Thus, a defendant's actions, rather than being evidence of consciousness of guilt, may be the result of the exercise of his statutory right to refuse the test. A defendant's exercise of his statutory right to refuse to submit to the blood test cannot be used against him in the prosecution's case in chief. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Dudley v. State, supra* (P. J. Onion, concurring).

■ Second, this court must determine whether this testimonial evidence was compelled for purposes of applying the Fifth Amendment standard. We agree with the rationale of the Minnesota Supreme Court in *State v. Andrews*, 297 Minn. 260, 212 N.W.2d 863, 864 (1973), wherein it stated:

"In one sense the testimonial action is obviously not compelled—the state is not ordering the suspect to *refuse* cooperation. But the state does compel a suspect to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself. The suspect's option to submit to a lawfully imposed burden instead of implicitly testifying against himself does not necessarily save the procedure: lifting a lawful burden—the examination—is in effect an inducement that casts doubt on the 'voluntariness' of the testimonial evidence thereby obtained."

Quoting from Note, *Constitutional Limitations on the Taking of Body Evidence*, 78 Yale L.J. 1074, 1084 (1969) (emphasis in original). See also *People v. Rodriguez*, 80 Misc.2d 1060, 364 N.Y.S.2d 786 (1975).

We hold that evidence of an accused's refusal to take a blood test violates the federal and state privilege against self-incrimination and therefore SDCL 32–23–10.1 is unconstitutional.* To the extent that our decision in *State v. Maher*, 272 N.W.2d 797 (S.D.1978) expresses views contrary to those expressed herein with respect to the finding that defendant's refusal to submit to the test was non-testimonial evidence and therefore not protected by the Fifth Amendment, we overrule that decision.

---

* In *Schmerber v. California*, 384 U.S. at 761–62 n. 6, 86 S.Ct. at 1831–32, 16 L.Ed.2d at 914, the United States Supreme Court stated (citations omitted, [ ] in original):

Many state constitutions, including those of most of the original Colonies, phrase the privilege in terms of compelling a person to give 'evidence' against himself. But our decision cannot turn on the Fifth Amendment's use of the word 'witness.' '[A]s the manifest purpose of the constitutional provisions, both of the States and of the United States, is to prohibit the compelling of testimony of a self-incriminating kind from a party or a witness, the liberal construction which must be placed upon constitutional provisions for the protection of personal rights would seem to require that the constitutional guaranties, however differently worded, should have as far as possible the same interpretation. . . .' This footnote indicates that *Schmerber* was decided in light of the more liberal definition of "evidence" as used in our state constitution. Since the Fifth Amendment of the U. S. Constitution is broad enough to exclude this evidence, there is no need to draw a distinction at this time between S.D.Const. art. VI, § 9 and the Fifth Amendment of the U. S. Constitution.

The State also contends that Neville's statement "I'm too drunk, I won't pass the test", made after his arrest and after being advised of his *Miranda* rights to the police officers, is admissible into evidence. This incriminating statement is "an unavoidable by-product of the compulsion to take the test" and the United States Supreme Court has held that "general Fifth Amendment principles . . . would be applicable in these circumstances." *Schmerber v. State of California*, 384 U.S. at 765–66 n. 9, 86 S.Ct. 1833, 16 L.Ed.2d at 916–17.

In *Miranda v. Arizona, supra*, the United States Supreme Court held that a person subjected to custodial interrogation must be warned that he has a right to remain silent, that any statement he does make can be used in evidence against him, and that he has the right to the presence of an attorney, either retained or appointed. The Court further acknowledged that a defendant may waive these rights, but only if the waiver is made voluntarily, knowingly and intelligently will it render subsequent confessions admissible.

■ This court has held that in making the determination with respect to whether there was a voluntary waiver of a defendant's Fifth Amendment rights, the totality of the circumstances surrounding the interrogation must be examined. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *State v. Cowell*, 288 N.W.2d 322 (S.D.1980). Custodial statements made by an intoxicated defendant are not per se involuntary, but rather this is one of the circumstances to be considered by the trial judge in his determination of voluntariness. *U. S. v. Brown*, 535 F.2d 424 (8th Cir. 1976). The trial judge must make the decision regarding voluntariness of the statement in the first instance. *State v. Cowell, supra; State v. Stumes*, 90 S.D. 382, 241 N.W.2d 587 (1976); *State v. Adkins*, 88 S.D. 571, 225 N.W.2d 598 (1975).

This matter arose on a motion to suppress which required a finding of voluntariness by the trial judge in accordance with *State v. Stumes, supra*, with findings of fact and conclusions of law entered. There was no question of hearing the question of voluntariness in the presence of the jury as in *State v. Lufkins*, 309 N.W.2d 331 (S.D.1981).

■ In the case before us, the circuit court did not enter findings of fact or conclusions of law regarding the voluntariness of Neville's statement. Therefore, we remand for a finding on this issue.

In light of our holding that SDCL 32–23–10.1 is unconstitutional as a denial of Neville's constitutional privilege against self-incrimination, we need not address the other issues raised on appeal or deem them to be without merit.

We affirm the order of the circuit court suppressing the admission of refusal evidence and remand for further proceedings not inconsistent with this holding with regard to the suppression of Neville's statement.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

WOLLMAN, C. J., dissents.

WOLLMAN, Chief Justice (dissenting).

Because I am persuaded by the logic of those decisions holding that admission of the fact of a defendant's refusal to submit to a chemical test for intoxication is not violative of the privilege against self-incrimination, I cannot agree that SDCL 32–23–10.1 is unconstitutional.

The seminal case for upholding the introduction of such evidence is *People v. Ellis*, 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966). In holding that introduction of evidence of a defendant's refusal to participate in a voice identification test did not constitute a violation of the defendant's constitutional privilege against self-incrimination, Chief Justice Traynor wrote:

The privilege against self-incrimination applies to evidence of "communications or testimony" of the accused, but not to "real or physical" evidence derived from him . . . . The results of voice identification tests fall within the category of real or physical evidence . . . . In such a test, the speaker is asked, not to communicate

ideas or knowledge of facts, but to engage in the physiological processes necessary to produce a series of articulated sounds, the verbal meanings of which are unimportant. . . .

Even though evidence obtained from a voice identification is not within the privilege against self-incrimination, the question remains whether evidence and comment on a refusal to take such a test is admissible. . . . [The rule prohibiting comment on a defendant's refusal to testify] is not applicable when, as in this case, the defendant has no constitutional right to refuse to speak solely for purposes of voice identification. . . .

Nor was defendant's refusal to "display his voice" itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody . . . false alibi . . . flight . . . suppression of evidence . . . and failure to respond to accusatory statements when not in police custody . . . its admission does not violate the privilege. . . . A guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence. . . .

Although conduct indicating consciousness of guilt is often described as an "admission by conduct," such nomenclature should not obscure the fact that guilty conduct is not a testimonial statement of guilt. It is therefore not protected by the Fifth Amendment. By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind.

55 Cal.Rptr. 385, 386–87, 421 P.2d 393, 394–95, 397–98 (citations omitted, footnotes omitted).

In a companion case decided the same day, the California Supreme Court applied the reasoning in the *Ellis* case in holding that there was no constitutional bar to evidence of and comment on a defendant's refusal to submit to a breathalyzer test for intoxication. *People v. Sudduth*, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1967).

Other jurisdictions that have followed the reasoning in the *Ellis* and *Sudduth* cases include Alabama (*Hill v. State*, 366 So.2d 318 (Ala.1979)); Arizona (*Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971)); Nebraska (*State v. Meints*, 189 Neb. 264, 202 N.W.2d 202 (1972)); New York (*People v. Thomas*, 46 N.Y.2d 100, 412 N.Y.S.2d 845, 385 N.E.2d 584 (1978), appeal dismissed, 444 U.S. 891, 100 S.Ct. 197, 62 L.Ed.2d 127 (1979)); Ohio (*City of Westerville v. Cunningham*, 15 Ohio St.2d 121, 239 N.E.2d 40 (1968)); and Pennsylvania (*Commonwealth v. Robinson*, 229 Pa.Super. 131, 324 A.2d 441 (1974)). See also *State v. Holt*, 261 Iowa 1089, 156 N.W.2d 884 (1968). I would follow these decisions and hold that the trial court erred in ruling that SDCL 32–23–10.1 is unconstitutional.

As an alternative holding, I would follow the reasoning of the Supreme Court of Vermont as expressed in the case of *State v. Brean*, 136 Vt. 147, 385 A.2d 1085 (1978):

The right to refuse to submit to a blood or breath test in Vermont is a creature of statute, 23 V.S.A. § 1205, and not the Federal or State Constitutions. Since the Vermont Legislature has deemed fit to grant suspected intoxicated drivers more "protection" than is constitutionally required, the proper question is not, as defendant suggests, whether refusal evidence is testimonial or communicative in nature and thereby protected by the cloak of the Fifth Amendment, but rather whether the Legislature possesses the power to place a condition upon the grant of a statutory right. We think it eminently clear that it does. Since the right to refuse to submit to the test is a matter of legislative grace or privilege . . . the Legislature may properly condition the exercise of that right by providing that any refusal may be introduced as evidence in a criminal proceeding. . . .

385 A.2d at 1088 (citation omitted).

In distinguishing earlier decisions that had held that evidence of refusal to take a

blood test could not be used against a defendant in a criminal proceeding, the Vermont Court pointed out that the state legislature had amended the state's implied consent statute to provide for the admission in evidence of a defendant's refusal to submit to a chemical test for intoxication:

Under the present statute, however, the motorist's refusal right is not absolute, but has been made expressly conditional—a change that is manifestly within the prerogative of the Legislature.

We hold that the admission of refusal evidence, as expressly authorized by 23 V.S.A. § 1205(a), does not violate defendant's privilege against self-incrimination; accordingly, there was no deprivation of defendant's due process rights.

385 A.2d at 1088.

The situation that faced the Supreme Court of Vermont parallels the situation in this state. As pointed out in the majority opinion, we held in *State v. Oswald*, 90 S.D. 342, 241 N.W.2d 566 (1976), that:

We have a South Dakota statute which grants an absolute right to an arrested person to refuse to submit to testing to determine the alcoholic content of his or her blood, albeit not without certain consequences. But the consequences of such refusal are provided by statute and they nowhere include the admissibility of evidence of such refusal in court on a DWI charge. . . .

90 S.D. at 348, 241 N.W.2d at 570.

As we said in *State v. Buckingham*, 90 S.D. 198, 204, 240 N.W.2d 84, 87 (1976), "Implicit in our implied consent statute, however, is the right to refuse to submit to a test and, a fortiori, the requirement that a choice be made between submitting to the test or suffering the consequences of such refusal." One of the consequences of such refusal is to make the fact of such refusal admissible in evidence at the subsequent trial.* To that extent, then, there is no

"absolute right" under state law to refuse to submit to a chemical test, if by that term it is argued that no adverse consequences may flow from the exercise of such right. Indeed, in view of the fact that one of the consequences of the refusal to submit to a chemical test is the revocation of one's driver's license, it is a contradiction in terms to characterize the right of refusal as "absolute." Accordingly, it is hardly realistic to say that a defendant's refusal to submit to a chemical test may be the exercise of his statutory right to refuse the test rather than the manifestation of consciousness of guilt. While the former may in a rare case be true, the latter is the far more likely situation.

I would adhere to the views expressed in *State v. Maher*, 272 N.W.2d 797 (S.D.1978), and hold that the introduction of evidence of refusal to submit to a chemical test for intoxication does not violate a defendant's rights under either the United States Constitution or the South Dakota Constitution. Accordingly, I would reverse the decision of the trial court and remand the case to circuit court for trial.

---

* As a counterpart of SDCL 32–23–10.1, the legislature, by 1980 S.D.Sess.Laws ch. 230, § 2 (SDCL 19–13–28.1), provided that:

Notwithstanding the provisions of § 19–13–28, when a person stands trial for driving while under the influence of alcohol or drugs, as provided under § 32–23–1, and that person has refused chemical analysis, as provided in § 32–23–10, such refusal is admissible into evidence. Such person may not claim privilege against self-incrimination with regard to admission of refusal to submit to chemical analysis.